

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**MAR 2 6 2008**

**F I L E D**

UNITED STATES OF AMERICA ex rel. )
THEODORE LUCZAK, )
)
            Petitioner, )
)
       v. )
)
)
TERRY McCANN, Warden, )
)
            Respondent. )

**MAR 2 6 2008** **YM**

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT.**

No. 07 C 6375

The Honorable
Ronald A. Guzman,
Judge Presiding.

## TO THE CLERK OF THE UNITED STATES DISTRICT COURT

The attached **Exhibits to Respondent's Motion to Dismiss** the above-

captioned Petition for Writ of Habeas Corpus are hereby filed with this Court:

       Exhibit A:                 *People v. Luczak*, 714 N.E.2d 995 (Ill.App. 1999);

       Exhibit B:                 Order denying PLA in *People v. Luczak*, No. 87859, 720 N.E.2d 1101 (Table) (Ill. 1999);

       Exhibit C:                 *Luczak v. Illinois*, 528 U.S. 1164 (2000);

       Exhibit D:                 *People v. Luczak*, 869 N.E.2d 1185 (Ill.App. 2007);

       Exhibit E:                 Order denying PLA in *People v. Luczak*, No. 105065 (Ill. 2008);

       Exhibit F:                 Order in *Luczak v. Schomig*, 01-C-9352 (N.D. Ill. Mar. 24, 2003);

Exhibit G:

Order denying CA request in *Luczak v. Schomig,* No. 01-C-9352 (N.D. Ill. May 1, 2003); and

Exhibit H:

Order denying CA in *Luczak v. Schomig,* No. 03-2230 (7th Cir. Oct 30, 2003).

March 26, 2008

Respectfully submitted,
LISA MADIGAN
Attorney General of Illinois

GARSON FISCHER, Bar #: 6286165
Assistant Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601
TELEPHONE: (312) 814-2566
FAX: (312) 814-2253
E-MAIL: gfischer@atg.state.il.us

**Westlaw.**

714 N.E.2d 995

Page 1

306 Ill.App.3d 319, 714 N.E.2d 995, 239 Ill.Dec. 698
(Cite as: 306 Ill.App.3d 319, 714 N.E.2d 995)

**H**
People v. **Luczak**
Ill.App. 1 Dist.,1999.

Appellate Court of Illinois,First District, First Division.
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Theodore **LUCZAK**, Defendant-Appellant.
No. 1-97-2763.

June 14, 1999.
Rehearing Denied Aug. 17, 1999.

Following jury trial before the Circuit Court, Cook County, Edward M. Fiala, Jr., J., defendant was convicted of two counts of aggravated criminal sexual assault. Defendant appealed. The Appellate Court, Frossard, J., held that: (1) other crimes evidence that defendant sexually assaulted a different victim six years earlier under remarkably similar circumstances was admissible to prove intent and modus operandi, and (2) prejudicial effect of evidence did not substantially outweigh its probative value.

Affirmed.

West Headnotes

**[1] Criminal Law 110 €═╾369.2(1)**

110 Criminal Law
   110XVII Evidence
      110XVII(F) Other Offenses
         110k369 Other Offenses as Evidence of Offense Charged in General
            110k369.2 Evidence Relevant to Offense, Also Relating to Other Offenses in General
               110k369.2(1) k. In General. Most Cited Cases
Other crimes evidence is relevant for any purpose other than to show a defendant's propensity to commit a crime.

**[2] Criminal Law 110 €═╾1153(1)**

110 Criminal Law
   110XXIV Review
      110XXIV(N) Discretion of Lower Court
         110k1153 Reception and Admissibility of Evidence; Witnesses
            110k1153(1) k. In General. Most Cited Cases
The trial court's decision to admit evidence of other crimes will not be reversed absent a clear abuse of discretion.

**[3] Criminal Law 110 €═╾369.2(1)**

110 Criminal Law
   110XVII Evidence
      110XVII(F) Other Offenses
         110k369 Other Offenses as Evidence of Offense Charged in General
            110k369.2 Evidence Relevant to Offense, Also Relating to Other Offenses in General
               110k369.2(1) k. In General. Most Cited Cases
Because of the potential prejudicial effect of other crimes evidence, the prosecution must identify similarities between the other crime and the crime charged to ensure that the other crimes evidence is not offered merely to show propensity.

**[4] Criminal Law 110 €═╾371(9)**

110 Criminal Law
   110XVII Evidence
      110XVII(F) Other Offenses
          110k371 Acts Showing Intent or Malice or Motive
            110k371(9) k. In Prosecutions for Abduction, Lewdness, Prostitution, Rape, and Other Sexual Crimes. Most Cited Cases
Other crimes evidence of defendant's sexual assault of another victim six years earlier was admissible in prosecution for aggravated criminal sexual assault to prove defendant's intent to assault victim and in-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT A**

714 N.E.2d 995
306 Ill.App.3d 319, 714 N.E.2d 995, 239 Ill.Dec. 698
(Cite as: 306 Ill.App.3d 319, 714 N.E.2d 995)

tent in seeking out victim and getting her into car, where crimes were remarkably similar, in that both involved defendant offering ride to female pedestrian, talking about his gang membership once she was in car, calling her a "tease," threatening to throw her into lake or river if she did not consent to sex, trying to force or forcing her to perform oral sex, engaging in anal intercourse in secluded location, and dropping victim off after attack.

**[5] Criminal Law 110 ⬤══➤372(1)**

110 Criminal Law
    110XVII Evidence
        110XVII(F) Other Offenses
            110k372 Acts Part of Series Showing System or Habit
                110k372(1) k. In General. Most Cited Cases
While general similarities between a prior crime and the charged crime satisfy the threshold of admissibility when the State offers the prior crime to prove intent or lack of an innocent frame of mind, the factual similarities between the two crimes must be highly identifiable for the prior crime to be admissible as *modus operandi* evidence.

**[6] Criminal Law 110 ⬤══➤372(1)**

110 Criminal Law
    110XVII Evidence
        110XVII(F) Other Offenses
            110k372 Acts Part of Series Showing System or Habit
                110k372(1) k. In General. Most Cited Cases
When other crimes evidence is offered as *modus operandi* evidence, the two criminal acts must exhibit a pattern or signature in the defendant's behavior from which the jury can infer that the conduct is consistent with the acts of one perpetrator.

**[7] Criminal Law 110 ⬤══➤372(7)**

110 Criminal Law
    110XVII Evidence

**[8] Criminal Law 110 ⬤══➤372(7)**

110 Criminal Law
    110XVII Evidence
        110XVII(F) Other Offenses
            110k372 Acts Part of Series Showing System or Habit
                110k372(7) k. Incest, Rape, and Other Sex Offenses. Most Cited Cases
Other crimes evidence of similar sexual assault against different victim six years earlier was admissible to prove modus operandi in prosecution for aggravated criminal sexual assault in which defendant admitted giving victim a ride, but denied assaulting her, even though defendant's identity was not in dispute, as distinctive and identifiable similarities between assaults were relevant to show that crime occurred.

**[9] Criminal Law 110 ⬤══➤369.1**

110 Criminal Law
    110XVII Evidence
        110XVII(F) Other Offenses
            110k369 Other Offenses as Evidence of Offense Charged in General
                110k369.1 k. In General. Most Cited

110XVII(F) Other Offenses
        110k372 Acts Part of Series Showing System or Habit
           110k372(7) k. Incest, Rape, and Other Sex Offenses. Most Cited Cases
Other crimes evidence of defendant's sexual assault of another victim six years earlier was admissible in prosecution for aggravated criminal sexual assault to prove modus operandi where factual similarities between crimes were highly identifiable and behavior constituted a distinct pattern or signature, in that both involved defendant offering ride to female pedestrian, talking about his gang membership once she was in car, calling her a "tease," threatening to throw her into lake or river if she did not consent to sex, trying to force or forcing her to perform oral sex, engaging in anal intercourse in secluded location, and dropping victim off after attack.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

714 N.E.2d 995
306 Ill.App.3d 319, 714 N.E.2d 995, 239 Ill.Dec. 698
**(Cite as: 306 Ill.App.3d 319, 714 N.E.2d 995)**

Page 3

Cases
Other crimes evidence is not admissible solely to bolster the testimony of the victim or other prosecution witnesses.

**[10] Criminal Law 110 ⟶673(5)**

110 Criminal Law
   110XX Trial
      110XX(C) Reception of Evidence
         110k673 Effect of Admission
            110k673(5) k. Limiting Effect of Evidence of Other Offenses. Most Cited Cases
Trial court's use of a limiting instruction, however, substantially reduces the prejudicial effect of the other crimes evidence.

**[11] Criminal Law 110 ⟶371(9)**

110 Criminal Law
   110XVII Evidence
      110XVII(F) Other Offenses
         110k371 Acts Showing Intent or Malice or Motive
            110k371(9) k. In Prosecutions for Abduction, Lewdness, Prostitution, Rape, and Other Sexual Crimes. Most Cited Cases

**Criminal Law 110 ⟶372(7)**

110 Criminal Law
   110XVII Evidence
      110XVII(F) Other Offenses
         110k372 Acts Part of Series Showing System or Habit
            110k372(7) k. Incest, Rape, and Other Sex Offenses. Most Cited Cases
Prejudicial effect of other crimes evidence of remarkable similar sexual assault committed on another victim did not substantially outweigh its probative value in showing intent and modus operandi in prosecution for aggravated criminal sexual assault in which court gave limiting instruction, even though instruction lacked language on modus operandi evidence.

**[12] Criminal Law 110 ⟶369.2(1)**

110 Criminal Law
   110XVII Evidence
      110XVII(F) Other Offenses
         110k369 Other Offenses as Evidence of Offense Charged in General
            110k369.2 Evidence Relevant to Offense, Also Relating to Other Offenses in General
               110k369.2(1) k. In General. Most Cited Cases
It is within the sound discretion of the trial judge to determine whether the evidence of other crimes is relevant to a material issue and whether its probative value outweighs its prejudicial impact.

**\*\*996 \*319 \*\*\*699** Michael J. Pelletier, Deputy Defender, Office of the State Appellate Defender, Chicago (Linda Eigner of counsel), for Appellant.
Richard A. Devine, Cook County State's Atty., Chicago (Renee Goldfarb, Alan J. Spellberg and Jennifer C. Zucker of counsel), for Appellee.
Justice FROSSARD delivered the opinion of the court:
Defendant, Theodore Luczak, appeals his conviction for two counts of aggravated criminal sexual assault. Defendant asserts that the trial court erred in allowing the State to introduce in its case in chief evidence that defendant sexually assaulted a different victim six years prior to the current charges.

Prior to trial, the State moved to introduce into evidence defendant's prior crime, arguing that evidence of the other crime showed defendant's intent at the time of the charged crime and **\*320** established defendant's *modus operandi*. Over objection, the trial court granted the motion and stated that the other crimes evidence demonstrated defendant's *modus operandi* and intent.

At trial, the complainant, S.S., testified that on April 22, 1995, between 9 and 10 p.m., she was walking home from the train station in Hammond, Indiana, when she saw a white Cadillac Sedan Deville with a burgundy top pass her. Inside the car, she noticed two Hispanic males in the back seat and one white male, the defendant, driving. While S.S. continued to walk home, she saw the vehicle drive

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

714 N.E.2d 995
306 Ill.App.3d 319, 714 N.E.2d 995, 239 Ill.Dec. 698
**(Cite as: 306 Ill.App.3d 319, 714 N.E.2d 995)**

around the block and stop at a house near her, at which point the two Hispanic passengers exited the vehicle.

S.S. further testified that the vehicle either made a U-turn or drove around the block again before slowing down next to her. Defendant was alone in the vehicle. Defendant started to talk to S.S. and inquired as to her name, whether she had a boyfriend, and whether she liked to party. S.S. responded that she did not want to party and that she had a boyfriend. Defendant then offered S.S. a ride home and she agreed, because it was cold and she was only wearing a skirt. S.S. also asked defendant for his driver's license, for assurance, and he gave it to her to hold.

S.S. testified that defendant was polite and outgoing. After S.S. told defendant that she liked to dance, defendant stated he worked as a disc jockey at a nightclub in Chicago and that he was going to work. Defendant offered to take S.S. with him to the nightclub that evening and promised to drive her home after his shift ended. S.S. agreed to go but only if defendant first met S.S.'s sister. S.S. testified that defendant drove her home and S.S. introduced defendant to her sister. S.S. stated her sister told her that defendant was "all right" and seemed "harmless." Defendant and S.S. left her house.

As defendant and S.S. drove through the southeast side of Chicago, defendant stated that he needed to get some money and drove to a nearby house. While S.S. waited in the **997 ***700 car, defendant went into the house for five to eight minutes. Within a block of driving away from the house, defendant stated he liked S.S.'s eyes and began to touch her face. S.S told him to stop. Defendant then stated that he used to be a high-ranking member of the Latin Kings street gang and that he used to engage in the gang practice of "pulling a train." S.S. knew this gang practice involved gang-raping a woman.

S.S. next testified that defendant started to drive around the neighborhood and called her a "tease."

Defendant's tone and demeanor suddenly changed. Defendant threatened S.S. and told her if she did not do as he said, he would "blow [her] head off" or force her to engage in a gang rape. He also threatened to kill her sister, child, *321 and boyfriend and threatened to blow up her house. S.S. then noticed a blue van drive by and pull up parallel to defendant's car. S.S. saw at least two people in the front of the van. Defendant recognized the people in the van and flashed them gang signals. The van then followed her and defendant.

S.S. testified that the defendant told her that the people in the van were his "home boys" and were former members of the Latin Kings street gang. While the van was following them, defendant told S.S. to remove her clothing and do what he wanted or she was going to "pull a train" with the individuals in the van. Defendant also threatened to throw her into the river if she refused. Defendant continued to make these threats with the van following his car for approximately one half hour. S.S. tried to appease defendant by telling him that she would do what he wanted.

At this point S.S. testified that, while still driving, defendant unzipped his pants and demanded that S.S. perform oral sex on him. He told her if she refused, she was going to "pull a train" and that he would kill her. Defendant then grabbed S.S.'s neck, pulled her down, and forced her to perform oral sex on him.

S.S. next testified that defendant told her he wanted to have sex with her. Trying to avoid this, S.S. responded that she had a yeast infection. Defendant stated that he would have anal intercourse with S.S. Defendant continued to threaten S.S. and her family, and, as a result, S.S. agreed to have anal intercourse with defendant. Defendant then made a hand signal to the van, and it drove away. S.S. testified that defendant parked in a secluded alley on the southeast side of Chicago and engaged in anal intercourse with her in the back seat of the car. After several minutes, S.S. begged defendant to stop and defendant stated that he would let her go at mid-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

714 N.E.2d 995
306 Ill.App.3d 319, 714 N.E.2d 995, 239 Ill.Dec. 698
(Cite as: 306 Ill.App.3d 319, 714 N.E.2d 995)

Page 5

night.

S.S. next testified that she noticed the clock on the dash board read midnight and told defendant that he promised to stop and take her home. Defendant told her to shut up and said: "You're going to die. You're pulling a train." Defendant continued to assault her. Now believing that she was going to die, S.S. stated that she became crazed and she started to scream and beat defendant. Defendant attempted to calm S.S. down and agreed to take her home. After driving for a few minutes, defendant began to threaten S.S. again. S.S. told defendant that if he did not take her home, she would kill him.

S.S. testified that she was afraid that defendant was going to drive her to an unfamiliar area. She therefore grabbed the wheel and took the keys out of the ignition. Defendant and S.S. fought over the keys. After S.S. grabbed defendant's throat, he again agreed to take her home. Defendant told S.S. that if she went to the police, he would tell *322 the police that she was a prostitute and that she agreed to have sex with him for $500. Two blocks from S.S.'s house, she exited the vehicle and walked home. S.S. told her sister what happened and they drove to the hospital.

On the way to the hospital, S.S. and her sister flagged down a Hammond police officer who informed them that he would call the Chicago police department and have police officers meet her at the hospital. S.S. was treated at the hospital and spoke to Chicago police officers. On April 24, 1995, S.S. identified defendant in a lineup.

Based on complainant's description of defendant's car, the police located defendant two days later. Detective George Winistorfer**998 ***701 testified that on April 24, 1995, at 9:15 a.m., he first spoke with defendant alone at the police station. Defendant stated that he did pick up S.S. in Indiana while driving a rental car, went to her house, and agreed to go with her to a nightclub in Chicago. Defendant stated that, while driving to Chicago, S.S. hinted at acts of prostitution and told him she would do any-

thing for $500. Defendant stated that he dropped her off at the nightclub. Because he was not dressed for the club, he did not go in with her, but drove around for an hour. Defendant then drove S.S. home to Indiana. Again, S.S. offered to have sex with defendant for $500 but defendant declined. Defendant stated he dropped her off a block from her house and no sex acts occurred between them.

Defendant was identified in a lineup by S.S. and her sister. When he was told about contradictions between his and S.S.'s statements and the fact that S.S. was injured, defendant changed his statement. Defendant stated that on the way back from the night club, defendant engaged in anal sex with S.S. for money. After sex, defendant told S.S. that he did not have $500. Defendant stated that S.S. became angry, hit him, and choked him. Defendant drove S.S. home.

Detective Winistorfer next testified that an assistant State's Attorney informed defendant that he would be charged with criminal sexual assault. Defendant began to cry, stated that he had a problem with women, and sometimes could not control himself. Defendant then stated that S.S. was telling the truth and that defendant had forced S.S. to engage in oral and anal sex. Defendant, however, refused to sign any written statement and therefore defendant's statements were not reduced to writing.

The State then introduced defendant's prior crime. N.D. testified that on February 14, 1989, she was waiting for a bus to go to school. Defendant drove up and offered her a ride, which she accepted because she was running late. Defendant did not drive directly to N.D.'s school but talked about his gang membership with the Latin Kings and that he had to "violate" her. N.D. knew this term to refer to the rape of a *323 woman. Defendant then drove to a secluded alley near the lake on the southeast side of Chicago. Defendant told N.D. that if she did not cooperate, he would kill her by throwing her into the lake and drowning her. Defendant also called N.D. a " tease." In his car, defendant first tried to engage in oral sex but N.D. fought him off. Defendant then

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

714 N.E.2d 995
306 Ill.App.3d 319, 714 N.E.2d 995, 239 Ill.Dec. 698
(Cite as: 306 Ill.App.3d 319, 714 N.E.2d 995)

Page 6

forced N.D. to engage in vaginal and anal intercourse. After finishing, defendant drove N.D. to school and told her not to tell anyone.

After the State rested and the trial court denied defendant's motion for a directed verdict, defendant testified. Defendant stated that on April 23, 1995, he drove to Hammond, Indiana, to help a friend move. On his way back to Chicago, friends in his car noticed a woman, S.S., walking down the street and asked defendant to check her out. Defendant hesitated at first, but then drove around the block and pulled up to her. Defendant's friends exited the car and talked to her. Defendant's friends then told defendant that S.S. was looking for cocaine. Defendant stated he did not have enough money to buy cocaine and he needed to go to the south side of Chicago to get money. S.S. first asked for a ride home, and defendant and S.S. went to her house, where he stood at the front door while S.S. talked to her sister.

Defendant then drove to his friend's house on the south side of Chicago to obtain the cocaine that S.S. agreed to buy. Defendant went into his friend's house, obtained the cocaine, and brought it back to S.S. in the car. S.S. asked if she could inspect the cocaine and said she needed a cup of ice water. Defendant drove to McDonald's to get the cup of water and gave it to S.S. While parked on a busy street, S.S. tested the cocaine in a pipe. Following the test, S.S. told defendant that she wanted all the cocaine for $500. Defendant replied that it cost $900.

At this point, defendant testified that S.S. "flipped out." S.S. threatened to tell the police, her brother, and her boyfriend that defendant was a drug dealer. S.S. started to fight defendant and punched him. Defendant did not fight back but told S.S. to leave his car. Defendant testified that he became paranoid and was afraid that the police would **999 ***702 drive up. Defendant kicked S.S. out of the car, and he drove home.

Defendant then testified that he went to the police station two days later, after police officers came to

his house and told him that his vehicle had been involved in a criminal sexual assault. Defendant stated that he refused to make a statement to the police officers and denied ever making any statement to Detective Winistorfer. Defendant testified that if he had made a statement, he would have signed it.

After arguments and deliberations, the jury found defendant guilty of two counts of aggravated criminal sexual assault. The trial court *324 sentenced defendant to consecutive prison terms of 40 and 60 years for defendant's convictions.

Defendant contends that the trial court erred in admitting evidence that defendant sexually assaulted N.D. six years prior to the alleged attack on S.S. The trial court instructed the jury to consider this evidence only for the limited purpose of defendant's identification and intent. Defendant asserts that because he acknowledged being with S.S. on the day of the alleged attack, but denied any sexual conduct, evidence of other crimes was not relevant to establish defendant's identity or intent.

[1][2] In Illinois, other crimes evidence is relevant for any purpose other than to show a defendant's propensity to commit a crime. *People v. Robinson,* 167 Ill.2d 53, 62, 212 Ill.Dec. 256, 656 N.E.2d 1090 (1995); *People v. McDonald,* 62 Ill.2d 448, 455, 343 N.E.2d 489 (1975). Courts have recognized that other crimes evidence may be relevant and admissible in the prosecution's case in chief to prove *modus operandi,* intent, identity, motive, or absence of mistake. *People v. Illgen,* 145 Ill.2d 353, 372-73, 164 Ill.Dec. 599, 583 N.E.2d 515 (1991). The trial court's decision to admit evidence of other crimes will not be reversed absent a clear abuse of discretion. *People v. King,* 248 Ill.App.3d 253, 268-69, 188 Ill.Dec. 139, 618 N.E.2d 709 (1993).

[3] Because of the potential prejudicial effect of other crimes evidence, the prosecution must identify similarities between the other crime and the crime charged to ensure that the other crimes evidence is not offered merely to show propensity. *People v. Johnson,* 239 Ill.App.3d 1064, 1074, 180

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

714 N.E.2d 995
306 Ill.App.3d 319, 714 N.E.2d 995, 239 Ill.Dec. 698
(Cite as: 306 Ill.App.3d 319, 714 N.E.2d 995)

Page 7

Ill.Dec. 914, 608 N.E.2d 36 (1992). Once that threshold of similarity has been met, courts have found other crimes evidence relevant in a sexual assault prosecution to prove defendant's criminal intent or lack of an innocent frame of mind. *Johnson,* 239 Ill.App.3d at 1074-75, 180 Ill.Dec. 914, 608 N.E.2d 36.

In *Johnson,* defendant was charged with aggravated criminal sexual assault and argued that the complainant consented to his sexual advances. *Johnson,* 239 Ill.App.3d at 1075, 180 Ill.Dec. 914, 608 N.E.2d 36. The trial court allowed the prior sexual assault into evidence to prove defendant's absence of an innocent frame of mind. The appellate court affirmed and relied on the similarities between the two crimes. The court noted both victims were abducted in a the same manner and both victims were beaten, choked, and bitten. *Johnson,* 239 Ill.App.3d at 1075, 180 Ill.Dec. 914, 608 N.E.2d 36.

Similarly, in *People v. Harris,* 297 Ill.App.3d 1073, 1086, 232 Ill.Dec. 108, 697 N.E.2d 850 (1998), the court found that other crimes evidence was admissible to establish lack of innocent intent when defendant claimed consent and allegedly committed a prior similar sexual assault. The court again noted the similarities between the two crimes, such as the victims were abducted in the same area, were driven to a similar location, *325 were threatened, and were returned to locations where they lived or from where they were taken. *Harris,* 297 Ill.App.3d at 1086, 232 Ill.Dec. 108, 697 N.E.2d 850.

[4] In this case, like *Johnson* and *Harris,* defendant's two crimes were remarkably similar. Both victims were walking when defendant offered them a ride; defendant drove each victim to a secluded alley in the same area of Chicago; defendant threatened both victims by saying he would throw them into the lake or river if they did not agree to have sex with him; defendant called both women a "tease"; defendant wanted oral sex from both victims; and defendant assaulted the victims anally. Defendant spoke to both victims about his affiliation with the Latin **1000 ***703 Kings. Additionally, defendant attacked both victims in his vehicle; defendant made similar threats to each victim and called them similar names; and defendant drove them to the location that each victim was going after he attacked them.

Although defendant contended no sexual conduct occurred between him and S.S., he did claim that he and S.S. were together in his car. Defendant's testimony and S.S.'s testimony agreed that defendant offered her a ride, drove her to her house, and that they both left S.S.'s house in defendant's car. From there, the testimony substantially differed. S.S. testified that defendant drove to the southeast side of Chicago, threatened her, and eventually attacked her. Defendant, however, testified that he only possessed an intent to assist S.S. in purchasing cocaine and stated he briefly drove her to a friend's house and to a McDonald's restaurant. Clearly, defendant's intent was a central issue for the jury to decide. Therefore, evidence of defendant's prior crime was relevant to show defendant's intent at the time he was with the victim, specifically that defendant's intent was to sexually assault the victim.

Defendant relies on *People v. Bobo,* 278 Ill.App.3d 130, 214 Ill.Dec. 1057, 662 N.E.2d 623 (1996), where the court found error in admitting an investigator's account about other sexual abuse allegations against a teacher on trial for abusing one of his students. However, in that case, defendant denied he ever was with the student he allegedly abused and, additionally, the trial court allowed the investigator to talk about other allegations of abuse that lacked similarities with the crime charged. By contrast, in the case at bar, defendant admitted that he was with the victim on the date the alleged crime took place. Moreover, defendant's prior crime and the current charges contained remarkable similarities as to the manner in which defendant attacked both victims.

Defendant also cites *People v. Woltz,* 228 Ill.App.3d 670, 170 Ill.Dec. 502, 592 N.E.2d 1182 (1992). In that case, the court found error in the admissibility of other crimes evidence in a criminal

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

714 N.E.2d 995
306 Ill.App.3d 319, 714 N.E.2d 995, 239 Ill.Dec. 698
(Cite as: 306 Ill.App.3d 319, 714 N.E.2d 995)

Page 8

sexual assault prosecution to show defendant's absence of mistake or common design. *326Woltz, 228 Ill.App.3d at 674, 170 Ill.Dec. 502, 592 N.E.2d 1182. The court noted that defendant never claimed that the conduct underlying the criminal sexual assault charge was accidental, and therefore the other crimes evidence was not admissible to show absence of mistake. Moreover, because the prior crime and the charged crime did not show sufficient similarities to prove a distinctive pattern of criminal behavior or modus operandi, the court concluded that the evidence was not relevant to show common design. Woltz, 228 Ill.App.3d at 674, 170 Ill.Dec. 502, 592 N.E.2d 1182. The court, however, did not discuss whether evidence of defendant's other crime was relevant to show intent.

In this case, defendant's intent for offering and giving S.S. a ride was in dispute. Defendant did not deny that S.S. was with him on the date of the alleged crime and at the place of the alleged crime, defendant's vehicle. Therefore, evidence of defendant's other crime was not only relevant to prove defendant's criminal intent to commit a forced sexual assault on S.S. but to show defendant's intent for seeking out the victim and being with the victim, a contested issue at trial.

[5] We further note that, in contrast to Woltz, defendant's prior crime was relevant as proof of defendant's modus operandi. The State additionally sought to introduce the other crimes evidence on this basis prior to trial. While general similarities between a prior crime and the charged crime satisfy the threshold of admissibility when the State offers the prior crime to prove intent or lack of an innocent frame of mind, the factual similarities between the two crimes must be highly identifiable for the prior crime to be admissible as modus operandi evidence. Johnson, 239 Ill.App.3d at 1074, 180 Ill.Dec. 914, 608 N.E.2d 36.

[6] This court has stated, "Evidence of other crimes may be admissible as proof of modus operandi only upon a strong and persuasive showing of the similarity between the crime charged and the separate

offense; there must be a substantial and meaningful link between the offenses being compared." **1001 ***704 Harris, 297 Ill.App.3d at 1087, 232 Ill.Dec. 108, 697 N.E.2d 850. Therefore, when offered as modus operandi evidence, the two criminal acts must exhibit a pattern or signature in the defendant's behavior from which the jury can infer that the conduct is consistent with the acts of one perpetrator. People v. Jones, 156 Ill.2d 225, 240, 189 Ill.Dec. 357, 620 N.E.2d 325 (1993).

[7] As discussed above, the defendant's crimes against S.S. and N.D. possessed strong and remarkable similarities. Defendant approached both women while driving his car and offered both women a ride. After luring each woman into his car, defendant used his affiliation with the Latin Kings street gang to intimidate and threaten the victims. In both cases, defendant drove the victims to a remote alley and threatened to kill the victims by throwing them into the lake or river *327 if they did not have sex with him. Defendant called both women a "tease" and, at first, attempted to force both victims' heads on his penis. Finally, in both cases, defendant assaulted the victims anally; however, in N.D.'s case, defendant also penetrated her vaginally. Defendant then drove both victims to the location they originally intended to go to before encountering defendant. Defendant's behavior constituted a distinct pattern or signature and thus the other crimes evidence was properly presented to show modus operandi.

[8] Defendant argues because his identity was not an issue at trial, any other crimes evidence to show his modus operandi was irrelevant. In People v. Pitts, 299 Ill.App.3d 469, 233 Ill.Dec. 555, 701 N.E.2d 198 (1998), the court rejected this argument and held that once the defendant denies the charges in a criminal sexual assault prosecution and attacks the credibility of the victim, modus operandi evidence is relevant to "the issue of whether defendant committed the charged crimes." Pitts, 299 Ill.App.3d at 476, 233 Ill.Dec. 555, 701 N.E.2d 198. Moreover, in People v. Fuller, 117 Ill.App.3d

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

714 N.E.2d 995
306 Ill.App.3d 319, 714 N.E.2d 995, 239 Ill.Dec. 698
(Cite as: 306 Ill.App.3d 319, 714 N.E.2d 995)

Page 9

1026, 73 Ill.Dec. 474, 454 N.E.2d 334 (1983), the court found that other crimes evidence was admissible to demonstrate *modus operandi* even though identity was not an issue and the allegation that sexual contact occurred was denied. *Fuller,* 117 Ill.App.3d at 1034, 73 Ill.Dec. 474, 454 N.E.2d 334. The court reasoned that distinctive and identifiable similarities between a prior sexual assault and a current sexual assault charge are relevant to the issue of whether a crime was actually committed. *Fuller,* 117 Ill.App.3d at 1034, 73 Ill.Dec. 474, 454 N.E.2d 334. "Evidence of a defendant's *modus operandi* may be relevant not only to the issue of who committed a crime but also to the issue of whether a crime was committed at all." *Fuller,* 117 Ill.App.3d at 1034, 73 Ill.Dec. 474, 454 N.E.2d 334. Here, defendant's assault on N.D. demonstrated a pattern or signature from which the jury could infer that defendant sexually assaulted S.S. and committed the crime charged. The striking similarity of the other sexual assault was relevant to the issue of whether a crime was actually committed.

[9] We recognize that other crimes evidence is not admissible solely to bolster the testimony of the victim or other prosecution witnesses. *People v. Kimbrough,* 138 Ill.App.3d 481, 488, 93 Ill.Dec. 82, 485 N.E.2d 1292 (1985). Where, as here, the testimony of the victim and the defendant conflicts, the jury is faced with a credibility dispute and evidence that defendant committed another crime may impact the jury's decision on this issue. However, if the other crime evidence is relevant for a proper purpose, such as to prove intent or *modus operandi,* it will not be excluded merely because it may enhance or bolster the credibility of the victim. *Kimbrough,* 138 Ill.App.3d at 488, 93 Ill.Dec. 82, 485 N.E.2d 1292.

[10][11] Defendant further argues that prejudicial effect of the other crimes evidence substantially outweighed any probative value. The trial *328 court's use of a limiting instruction, however, substantially reduces the prejudicial effect of the other crimes evidence. *Johnson,* 239 Ill.App.3d at 1075,

180 Ill.Dec. 914, 608 N.E.2d 36. In this case, the trial court instructed the jury to limit its consideration of evidence of defendant's other crime to issues of identity and intent. Although the instruction lacked language on *modus operandi* evidence, it did provide a sufficient safeguard that the jury's consideration**1002 ***705 of the other crimes evidence was limited and not used to show propensity. Faith in the jury to follow instructions and separate issues is "the cornerstone of the jury system." *Illgen,* 145 Ill.2d at 376, 164 Ill.Dec. 599, 583 N.E.2d 515.

[12] It is within the sound discretion of the trial judge to determine whether the evidence of other crimes is relevant to a material issue and whether the probative value outweighs its prejudicial impact. *Illgen,* 145 Ill.2d at 375, 164 Ill.Dec. 599, 583 N.E.2d 515. We conclude that the trial court did not abuse its discretion in admitting evidence that defendant committed a prior sexual assault.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

TULLY and GALLAGHER, JJ., concur.
Ill.App. 1 Dist.,1999.
People v. Luczak
306 Ill.App.3d 319, 714 N.E.2d 995, 239 Ill.Dec. 698

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



720 N.E.2d 1101 (Table)
185 Ill.2d 650, 720 N.E.2d 1101 (Table), 242 Ill.Dec. 146
**(Cite as: 185 Ill.2d 650, 720 N.E.2d 1101 (Table))**


**H**
People v. Luczak
Ill. 1999.
(The decision of the Court is referenced in the
North Eastern Reporter in a table captioned
"Supreme Court of Illinois Dispositions of Petitions
for Leave to Appeal".)
Supreme Court of Illinois
People
v.
Theodore Luczak
**NO. 87859**


SEPTEMBER TERM, 1999
October 06, 1999


Lower Court: 306 Ill.App.3d 319, 239 Ill.Dec. 698,
714 N.E.2d 995

Disposition: Denied.

Ill. 1999.
People v. Luczak
185  Ill.2d  650,  720  N.E.2d  1101  (Table),  242
Ill.Dec. 146

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



**EXHIBIT B**

Westlaw.

120 S.Ct. 1182                                                                    Page 1
528 U.S. 1164, 120 S.Ct. 1182, 145 L.Ed.2d 1088, 68 USLW 3533
(Cite as: 528 U.S. 1164, 120 S.Ct. 1182)

**H**
Luczak v. Illinois
U.S.,2000

Supreme Court of the United States
Theodore LUCZAK, petitioner,
v.
ILLINOIS.
**No. 99-7216.**

Feb. 22, 2000.

Case below, 306 Ill.App.3d 319, 239 Ill.Dec. 698,
714 N.E.2d 995.

Petition for writ of certiorari to the Appellate Court
of Illinois, First District, denied.

U.S.,2000
Luczak v. Illinois
528 U.S. 1164, 120 S.Ct. 1182, 145 L.Ed.2d 1088,
68 USLW 3533

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT C

Westlaw.

**H**
People v. **Luczak**
Ill.App. 1 Dist.,2007.

Appellate Court of Illinois,First District, Fifth Division.
The PEOPLE of The State of Illinois, Plaintiff-Appellee,
v.
Theodore **LUCZAK**, Defendant-Appellant.
**Nos. 1-05-2377, 1-05-3244.**

June 8, 2007.
Rehearing Denied June 29, 2007.

**Background:** Following jury trial before the Circuit Court, Cook County, Edward M. Fiala, Jr., J., defendant was convicted of two counts of aggravated criminal sexual assault. Defendant appealed. The Appellate Court, 306 Ill.App.3d 319, 239 Ill.Dec. 698, 714 N.E.2d 995, affirmed. Defendant petitioned for habeas corpus, moved for DNA testing, and moved for free transcripts in order to withdraw guilty pleas for earlier convictions. The Circuit Court, Cook County, John J. Mannion and Marjorie C. Laws, JJ., denied motions and petition, and defendant appealed. The Circuit Court, Cook County, John J. Mannion and Marjorie C. Laws, JJ., denied petitions. Defendant appealed.

**Holdings:** The Appellate Court, Frossard, J., held that:
(1) defendant's motion seeking DNA testing was barred by doctrine of res judicata;
(2) error, in any, in summary dismissal of defendant's motion seeking DNA testing, was harmless;
(3) circuit court's summary dismissal of petition for writ of habeas corpus ad testificandum was not authorized by Habeas Corpus Act; and
(4) defendant was not entitled to free copies of transcripts of proceedings as he waited over 15 years to file motion to vacate guilty pleas.

Affirmed.

West Headnotes

**[1] Criminal Law 110 ⚷1139**

110 Criminal Law
110XXIV Review
110XXIV(L) Scope of Review in General
110k1139 k. Additional Proofs and Trial De Novo. Most Cited Cases
A trial court's dismissal of a motion seeking DNA testing under statute permitting a defendant to make a motion for DNA testing on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to the testing which is now requested because the technology for the testing was not available at the time of trial is reviewed de novo; de novo review is appropriate because the trial court's decision on such a motion is necessarily based upon a review of the pleadings and trial record and is not based on an assessment of the credibility of witnesses. S.H.A. 725 ILCS 5/116-3.

**[2] Criminal Law 110 ⚷1590**

110 Criminal Law
110XXX Post-Conviction Relief
110XXX(C) Proceedings
110XXX(C)1 In General
110k1590 k. Discovery and Disclosure. Most Cited Cases
In order to present a prima facie case for DNA testing under statute permitting a defendant to make a motion for DNA testing on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to the testing which is now requested because the technology for the testing was not available at the time of trial, the defendant must show that identity was the central issue at trial and that the evidence to be tested was subject to a sufficiently secure chain of custody. S.H.A. 725 ILCS 5/116-3.

**[3] Criminal Law 110 ⚷1668(3)**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT D

869 N.E.2d 1185
374 Ill.App.3d 172, 869 N.E.2d 1185, 312 Ill.Dec. 194
(Cite as: 374 Ill.App.3d 172, 869 N.E.2d 1185)

Page 2

110 Criminal Law
    110XXX Post-Conviction Relief
        110XXX(C) Proceedings
            110XXX(C)3 Hearing and Determination
                110k1666 Effect of Determination
                    110k1668 Successive Post-Conviction Proceedings
                    110k1668(3) k. Particular Issues and Cases. Most Cited Cases
Defendant's motion seeking DNA testing under statute permitting a defendant to make a motion for DNA testing on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to the testing which is now requested because the technology for the testing was not available at the time of trial was barred by doctrine of res judicata as same issue had already been decided in earlier post-conviction proceeding. S.H.A. 725 ILCS 5/116-3.

**[4] Judgment 228 €⟹584**

228 Judgment
    228XIII Merger and Bar of Causes of Action and Defenses
        228XIII(B) Causes of Action and Defenses Merged, Barred, or Concluded
            228k584 k. Nature and Elements of Bar or Estoppel by Former Adjudication. Most Cited Cases

**Judgment 228 €⟹720**

228 Judgment
    228XIV Conclusiveness of Adjudication
        228XIV(C) Matters Concluded
            228k716 Matters in Issue
                228k720 k. Matters Actually Litigated and Determined. Most Cited Cases
The doctrine of res judicata bars consideration of issues that have been previously raised and adjudicated.

**[5] Criminal Law 110 €⟹1177**

110 Criminal Law

110XXIV Review
    110XXIV(Q) Harmless and Reversible Error
        110k1177 k. Sentence and Judgment and Proceedings After Judgment. Most Cited Cases
Error, if any, in summary dismissal of defendant's motion seeking DNA testing under statute permitting defendant to make motion for DNA testing on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to testing which was now requested because technology for testing was not available at time of trial, was harmless; regardless of whether court erred in failing to provide defendant with notice and opportunity to be heard, defendant could not have cured inherent defect in DNA motion because he could not allege, or present prima facie case that identity was issue in trial which resulted in his conviction, thus summary dismissal of motion was inevitable. S.H.A. 725 ILCS 5/116-3.

**[6] Appeal and Error 30 €⟹1061.2**

30 Appeal and Error
    30XVI Review
        30XVI(J) Harmless Error
            30XVI(J)14 Dismissal
                30k1061.2 k. In General. Most Cited Cases
Circuit Court's summary dismissal of petition for writ of habeas corpus ad testificandum, in which petitioner sought to be present to manage his case, cross-examine witnesses and present rebuttal evidence, did not prejudice petitioner, even if summary dismissal was not authorized by Habeas Corpus Act, where petition raised no legal issue cognizable under the Act nor any legal argument or legal authority to support petitioner's claim, and circuit court's ruling addressed the precise petition presented and the precise relief requested. S.H.A. 735 ILCS 5/10-101 et seq.

**[7] Criminal Law 110 €⟹1077.2(1)**

110 Criminal Law
    110XXIV Review
        110XXIV(F) Proceedings, Generally

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

869 N.E.2d 1185
374 Ill.App.3d 172, 869 N.E.2d 1185, 312 Ill.Dec. 194
(Cite as: 374 Ill.App.3d 172, 869 N.E.2d 1185)

110k1077 Proceeding in Forma Pauperis
110k1077.2 Free Record or Transcript
110k1077.2(1) k. In General. Most
Cited Cases
Defendant was not entitled to free copies of transcripts of proceedings from his pleas of guilty and sentences as defendant waited over 15 years to file motion to vacate guilty pleas. Sup.Ct.Rules, Rule 605(b)(2), (b)(5).

**1187 Edwin A. Burnette, Office of the Public Defender, Chicago (Marsha Watt, of counsel), for Appellant.
Richard A. Devine, Cook County State's Attorney, Chicago (James E. Fitzgerald, Anthony M. O'Brien, Edward Hunter Olivieri, of counsel), for Appellee.
Justice FROSSARD delivered the opinion of the court:
***196 *174 On February 2, 1990, defendant pled guilty to one count of aggravated criminal sexual assault and one count of criminal sexual assault charged under No. 89 CR 6782, two counts of criminal sexual assault under No. 89 CR 6783, and two counts of criminal sexual assault under No. 89 CR 6784. The trial court sentenced defendant to concurrent terms of incarceration of 10 years in No. 89 CR 6782; 6 years in No. 89 CR 6783; and 6 years in No. 89 CR 6784.

After serving these concurrent sentences, defendant was charged under indictment No. 95 CR 14118, with aggravated criminal sexual assault, criminal sexual assault, aggravated kidnaping, and unlawful restraint. A jury found defendant guilty of two counts of aggravated criminal sexual assault and he was sentenced to consecutive prison terms of 60 and 40 years. Defendant appealed these convictions, arguing that the trial court erred in allowing evidence of one of his prior crimes of sexual assault. This court affirmed his conviction and held that the prior crime evidence was relevant to defendant's intent and *modus operandi*. *People v. Luczak*, 306 Ill.App.3d 319, 326-27, 239 Ill.Dec. 698, 714 N.E.2d 995 (1999), *appeal denied*, 185 Ill.2d 650, 242 Ill.Dec. 146, 720 N.E.2d 1101

(1999), *cert. denied*, 528 U.S. 1164, 120 S.Ct. 1182, 145 L.Ed.2d 1088 (2000).

In June of 1999, defendant filed a *pro se* postconviction petition seeking an order, pursuant to section 116-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/116-3 (West 2004)) to allow DNA testing of evidence in connection with his trial for case No. 95 CR 14118. On July 7, 1999, the trial court denied this petition, explaining that defendant could have raised the ***197 **1188 issue of DNA testing during direct appeal but did not, and thus, the petition was untimely and without merit. Defendant did not appeal. On March 27, 2000, defendant filed a successive post-conviction petition alleging several issues including ineffective assistance of appellate counsel and due process violations. He did not request any relief under the DNA statute as he had requested previously. This petition was also denied, and defendant filed a timely notice of appeal. On appeal, this court, on June 25, 2001, affirmed the judgment of the trial court. *People v. Luczak*, No. 1-00-1645, 323 Ill.App.3d 1148, 279 Ill.Dec. 598, 800 N.E.2d 886 (2001) (unpublished order under Supreme Court Rule 23). The mandate issued on November 5, 2001.

In May 2001, defendant filed another *pro se* motion to vacate a void judgment in which he argued that his consecutive extended-term sentences were unconstitutional in light of the principles articulated in *175Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The trial court ruled that *Apprendi* did not apply to recidivism or consecutive sentencing and denied defendant's motion and this court affirmed. *People v. Luczak*, No. 1-01-3197, 341 Ill.App.3d 1109, 304 Ill.Dec. 661, 853 N.E.2d 450 (2003) (unpublished order under Supreme Court Rule 23).

In September 2002, defendant filed a *habeas corpus* petition alleging that his indictment in No. 95 CR 14118 was faulty and that the court could not have entered a valid judgment. The trial court denied that petition on October 22, 2002, and on appeal this

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

court granted counsel's motion to withdraw pursuant to *Finley*(*Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)) and affirmed the trial court's decision. *Luczak v. Mote,* No. 1-03-0005, 347 Ill.App.3d 1103, 310 Ill.Dec. 803, 867 N.E.2d 116 (2004) (unpublished order under Supreme Court Rule 23).

On January 10, 2005, defendant filed a motion, pursuant to section 116-3 (725 ILCS 5/116-3 (West 2004)), to permit DNA testing on evidence used in his trial under No. 95 CR 14118. Defendant also filed a *pro se* petition which he labeled as a "Petition for a Writ of *Habeas Corpus AdTestificandum* " seeking to appear in court and argue the motion. The court denied both the *habeas corpus* petition and the section 116-3 motion.

On February 14, 2005, defendant filed a motion for free transcripts, alleging that he would be seeking to withdraw his guilty pleas from his convictions in Nos. 89 CR 6782, 89 CR 6783, and 89 CR 6784. Those guilty pleas were entered on February 2, 1990. On July 1, 2005, defendant filed his motion to withdraw his guilty pleas from these convictions. In July of 2005, defendant was granted leave to file a late notice of appeal from the 1990 guilty pleas.

Defendant presents this court with consolidated appeals seeking review of (1) the denial of his 2005 section 116-3 motion for DNA testing as related to his convictions under No. 95 CR 14118; (2) the denial of his petition for writ of *habeas corpus;* and (3) the denial of his motion for free transcripts from his cases previously resolved by pleas of guilty on February 2, 1990. The factual basis for defendant's convictions under No. 95 CR 14118 is fully discussed in *People v. Luczak,* 306 Ill.App.3d 319, 239 Ill.Dec. 698, 714 N.E.2d 995 (1999), and will only be repeated as needed to resolve the instant case. We address each issue in turn.

## I. SECTION 116-3 DNA MOTION

[1] Defendant contends that the trial court erred in

dismissing his section 116-3 motion seeking DNA testing on evidence introduced at his trial under No. 95 CR ***198 **1189 14118. In support of that contention, defendant argues that (1) the court relied upon an order from the appellate court that did not exist; and (2) the court erred in treating defendant's motion for DNA testing as a post-conviction petition and *176 summarily dismissing the motion. A trial court's dismissal of a motion seeking DNA testing under section 116-3 is reviewed *de novo. People v. Price,* 345 Ill.App.3d 129, 133, 280 Ill.Dec. 242, 801 N.E.2d 1187 (2003). *De novo* review "is appropriate because the trial court's decision on such a motion is necessarily based upon a review of the pleadings and trial record and is not based on an assessment of the credibility of witnesses." *Price,* 345 Ill.App.3d at 133, 280 Ill.Dec. 242, 801 N.E.2d 1187.

Section 116-3 provides as follows:

"(a) A defendant may make a motion before the trial court that entered the judgment of conviction in his or her case for the performance of fingerprint or forensic DNA testing, including comparison analysis of genetic marker groupings of the evidence collected by criminal justice agencies pursuant to the alleged offense, to those of the defendant, to those of other forensic evidence, and to those maintained under subsection (f) of Section 5-4-3 of the Unified Code of Corrections, on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to the testing which is now requested because the technology for the testing was not available at the time of trial. Reasonable notice of the motion shall be served upon the State.

(b) The defendant must present a prima facie case that:

(1) identity was the issue in the trial which resulted in his or her conviction; and

(2) the evidence to be tested has been subject to a chain of custody sufficient to establish that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

869 N.E.2d 1185
374 Ill.App.3d 172, 869 N.E.2d 1185, 312 Ill.Dec. 194
(Cite as: 374 Ill.App.3d 172, 869 N.E.2d 1185)

it has not been substituted, tampered with, replaced, or altered in any material aspect.

(c) The trial court shall allow the testing under reasonable conditions designed to protect the State's interests in the integrity of the evidence and the testing process upon a determination that:

(1) the result of the testing has the scientific potential to produce new, noncumulative evidence materially relevant to the defendant's assertion of actual innocence even though the results may not completely exonerate the defendant;

(2) the testing requested employs a scientific method generally accepted within the relevant scientific community." 725 ILCS 5/116-3 (West 2004).

[2] Section 116-3 permits a defendant to make a motion for DNA testing "on evidence that was secured in relation to the trial which resulted in his or her conviction, but which was not subject to the testing which is now requested because the technology for the testing was not available at the time of trial." 725 ILCS 5/116-3(a) (West 2004). In order to present a *prima facie* case for DNA testing, "the defendant must show that identity was the central issue at trial and *177 that the evidence to be tested was subject to a sufficiently secure chain of custody." *People v. Johnson,* 205 Ill.2d 381, 393, 275 Ill.Dec. 820, 793 N.E.2d 591 (2002). If defendant demonstrates a *prima facie* case then the trial court must determine whether DNA testing will potentially produce new, noncumulative evidence that is materially relevant to the defendant's actual-innocence claim. *Johnson,* 205 Ill.2d at 393, 275 Ill.Dec. 820, 793 N.E.2d 591.

***199 **1190 A. DNA Motion Properly Dismissed As *Res Judicata*

[3][4] The doctrine of *res judicata* bars consideration of issues that have been previously raised and adjudicated. *People v. Blair,* 215 Ill.2d 427, 443,

294 Ill.Dec. 654, 831 N.E.2d 604 (2005); *People v. Williams,* 138 Ill.2d 377, 392, 150 Ill.Dec. 498, 563 N.E.2d 385 (1990). Defendant argues that Judge Laws erred in denying his DNA motion because she mistakenly believed the appellate court had previously resolved the DNA issue and as a result concluded that his 2005 DNA motion was barred by *res judicata.*

On June 30, 1999, defendant in a *pro se* post-conviction petition sought to obtain an order to allow DNA testing of evidence used in the trial of case No. 95 CR 14118. On July 7, 1999, that post-conviction petition was denied by Judge Fiala. Defendant did not appeal. Defendant filed another *pro se* post-conviction petition on March 27, 2000, which was denied by Judge Fiala on April 6, 2000. Defendant appealed and raised several issues; however, neither the March 2000 petition nor the appeal from its denial raised any DNA issues. On appeal, dismissal of the second *pro se* petition was affirmed. *People v. Luczak,* No. 1-00-1645 (2001) (unpublished order under Supreme Court Rule 23).

On January 10, 2005, defendant filed a *pro se* section 116-3 motion to obtain DNA testing of the evidence used in the trial of case No. 95 CR 14118. Defendant also filed a *pro se* petition for writ of *habeas corpus* in connection with the DNA motion. In resolving the DNA motion, Judge Laws noted that Judge Fiala, on July 7, 1999, had previously denied a motion to allow DNA testing; accordingly, she denied the motion because it had already been decided by Judge Fiala. She mistakenly indicated that this previous ruling by Judge Fiala had been affirmed on November 7, 2001, by the appellate court, unaware that defendant had not in fact appealed Judge Fiala's denial of his 1999 post-conviction petition seeking DNA testing. She, however, further correctly noted that section 116-3 required identity to be an issue at the time of trial in order to apply. In support of denying defendant's 2005 DNA motion, she noted that identity was not an issue during the trial of case No. 95 CR 14118 and indicated as follows:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

869 N.E.2d 1185
374 Ill.App.3d 172, 869 N.E.2d 1185, 312 Ill.Dec. 194
(Cite as: 374 Ill.App.3d 172, 869 N.E.2d 1185)

Page 6

"It appears that the defendant filed the same motion on June 22nd of 1999, a motion to allow DNA testing. Judge Fiala dismissed *178 that motion, it appears, on July 7th of 1999 finding that the petition was untimely, without merit, and denied it accordingly. Judge Fiala's finding was affirmed by the Appellate Court on November 7th of 2001.

I will again deny the motion for DNA testing. It's an issue that has already been decided by Judge Fiala and affirmed by the Appellate Court.

I must add that the defendant has filed this motion under 725 ILCS 5/116-3. One of the requirements is that identity is an issue at the time of trial.

I have reviewed the findings by the Appellate Court in the defendant's case filed November 15th of 1999, and it does not appear that identity was an issue in this matter and that the defendant testified at his own trial that he was with the victim; although, he disagreed that, in fact, he had sexually assaulted the victim.

So I don't believe that he has even met the criteria for 725 ILCS 5/116-3. I'll ask the clerk to notify the defendant of my decision. Motion is denied.

And the defendant's Petition for Writ of Habeas Corpus Relief in that he wants to appear in court for the hearing on the matter is also denied, and the matter is taken off call."

**1191 ***200 The record reflects that Judge Fiala, on July 7, 1999, denied a DNA motion made in connection with defendant's pro se petition filed by defendant in June 1999. Defendant did not appeal that ruling; accordingly, Judge Laws was mistaken when she indicated Judge Fiala's ruling was affirmed by the appellate court. However, that mistaken belief in no way changed the fact that defendant in 1999 sought DNA testing in connection with his post-conviction petition which was considered

by Judge Fiala and denied by Judge Fiala in 1999. Judge Laws was not mistaken when she noted that defendant had previously brought the same issue before Judge Fiala in 1999. Thus, the record reflects that Judge Laws correctly denied defendant's 2005 DNA motion because the same issue had already been decided by Judge Fiala in 1999 and accordingly was barred by the principles of res judicata.

### B. Summary Dismissal of DNA Motion Was Not Reversible Error

[5] Defendant further argues that his 2005 DNA motion was not properly dismissed by Judge Laws because the "subject motion of January 2005 was brought under section 5/116 (725 ILCS 5/116-3 (West 2000)) Motion for DNA Testing, while the June, 1999 filing was made pursuant to the Post Conviction Hearing Act (Act) (725 ILCS 5/122 (West 2000))." He argues that these "are two separate statutes enumerating separate classes[,] statutory rights." Essentially, *179 defendant contends that the ruling by Judge Laws denying defendant's DNA motion was in error because she treated his DNA motion like a post-conviction petition and then summarily dismissed it. In support of his position, defendant argues "the Illinois Supreme Court in *People v. Shellstrom*, 216 Ill.2d 45, 52-57, 295 Ill.Dec. 657, 833 N.E.2d 863 (2005), and *People v. Pearson*, 216 Ill.2d 58, 66-67, 295 Ill.Dec. 621, 833 N.E.2d 827 (2005), held that the recharacterization of a pleading of a *pro se* litigant as a successive post-conviction petition prior to dismissal of such petition, without notice and warning to the defendant, and without affording the defendant an opportunity to withdraw or amend the pleading, is reversible error."

We disagree with defendant's characterization of the resolution of the motion by Judge Laws. Judge Laws noted that defendant filed the same motion in June of 1999, a motion to allow DNA testing. However, further during her discussion she specifically indicated her recognition of the fact that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

869 N.E.2d 1185
374 Ill.App.3d 172, 869 N.E.2d 1185, 312 Ill.Dec. 194
(Cite as: 374 Ill.App.3d 172, 869 N.E.2d 1185)

Page 7

the 2005 DNA motion at issue in the instant case was filed under section 116-3. She stated: "I must further add that the defendant has filed this motion under 725 ILCS 5/116-3." She then accurately discussed the specific requirements imposed by the DNA statute including the fact that "identity is an issue at the time of trial." Mindful of the requirements of the DNA statute, she accurately referenced in substance the appellate court case from 1999 affirming defendant's conviction (*People v. Luczak,* 306 Ill.App.3d 319, 239 Ill.Dec. 698, 714 N.E.2d 995 (1999)), and she concluded: "I have reviewed the findings by the Appellate Court in the defendant's case filed November 15th of 1999, and it does not appear that identity was an issue in this matter and that the defendant testified at his own trial that he was with the victim; although, he disagreed that, in fact, he had sexually assaulted the victim."

The record reflects that Judge Laws was well aware of the fact that the motion at issue in the instant case was not made in connection with a post-conviction petition but, rather, was a DNA motion under section 116-3. We reject defendant's argument that Judge Laws recharacterized his DNA motion as a post-conviction petition. The DNA statute specifically provides***201 **1192 for the DNA motion to be brought by the defendant before the trial court that entered judgment of conviction, which is exactly what the defendant did in this case. 715 ILCS 5/116-3(a) (West 2004). Judge Laws specifically referenced the DNA statute. Under that statute, before the trial court shall consider whether to allow DNA testing, the defendant must present a *prima facie* case that identity was the issue in the trial and that the evidence has been subject to a sufficient chain of custody. *Johnson,* 205 Ill.2d at 393, 275 Ill.Dec. 820, 793 N.E.2d 591; 725 ILCS 5/116-3(b)(1), (b)(2) (West 2004). The record reflects that Judge Laws was well aware of the law and correctly applied it in *180 resolving defendant's section 116-3 DNA motion. Substantively, the dismissal of the defendant's DNA motion was proper because it was barred by the principles of *res judicata* and the record precluded defendant from presenting a *prima facie* case that identity was the issue in the trial.

However, defendant also procedurally challenges the summary dismissal of the DNA motion as reversible error relying on *People v. O'Connell,* 365 Ill.App.3d 872, 302 Ill.Dec. 841, 850 N.E.2d 278 (2006), *appeal allowed,*221 Ill.2d 662, 306 Ill.Dec. 281, 857 N.E.2d 680 (2006). Defendant argues that *O'Connell*"held that summary dismissal of a motion for evidentiary DNA testing is illegal." The court in *O'Connell* noted that section 116-3, like section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2004)), confers a limited right to challenge a conviction and lacks any express procedural provisions. Relying on *People v. Dyches,* 355 Ill.App.3d 225, 229, 291 Ill.Dec. 780, 824 N.E.2d 636 (2005), the court in *O'Connell* refused to read special summary dismissal procedures into section 116-3 and concluded that "[t]he trial court must, at a minimum, provide notice to the defendant of its *sua sponte* motion to dismiss, and the court must give the defendant an opportunity to respond." *O'Connell,* 365 Ill.App.3d at 877, 302 Ill.Dec. 841, 850 N.E.2d 278. However, the court further held that "harmless error analysis applies to the summary dismissal of a post-conviction petition for DNA testing of evidence." *O'Connell,* 365 Ill.App.3d at 877, 302 Ill.Dec. 841, 850 N.E.2d 278.

We agree with *O'Connell's* recognition of the need for the trial court to provide notice to defendant and give the defendant an opportunity to be heard before summarily dismissing a DNA petition. We also agree with *O'Connell* that the harmless error analysis applies to summary dismissal of a DNA petition. We are well aware, for the reasons previously discussed, that in the instant case, defendant's DNA motion under section 116-3 was not recharacterized by the trial court as a post-conviction petition. Moreover, the DNA motion was not brought in connection with section 2-1401. Cases previously recognizing the need for the court to provide defend-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

869 N.E.2d 1185
374 Ill.App.3d 172, 869 N.E.2d 1185, 312 Ill.Dec. 194
**(Cite as: 374 Ill.App.3d 172, 869 N.E.2d 1185)**

ant notice and an opportunity to be heard have done so in the context of resolving a section 2-1401 petition (*Dyches,* 355 Ill.App.3d 225, 291 Ill.Dec. 780, 824 N.E.2d 636) or post-conviction petition (*People v. Sargent,* 357 Ill.App.3d 946, 294 Ill.Dec. 272, 830 N.E.2d 684 (2005)).

We conclude, however, that it is similarly unfair to a defendant, when faced with a proposed *sua sponte* summary dismissal of a section 116-3 motion, to be deprived of notice and an opportunity to be heard. We recognize that summary dismissal procedures not provided by the DNA statute can deprive defendant of notice and an opportunity to be heard which are fundamental principles of justice. See *People v. Anderson,* 352 Ill.App.3d 934, 942, 288 Ill.Dec. 350, 817 N.E.2d 1000 (2004). We hold that summary dismissal, which is a ***202 **1193 drastic procedure, should not be read into section *181 116-3; accordingly, a defendant is entitled to notice and an opportunity to be heard regarding a section 116-3 DNA motion.

We recognize that our holding is consistent with the principals articulated in *Dyches,* 355 Ill.App.3d at 229, 291 Ill.Dec. 780, 824 N.E.2d 636, but conflicts with the Fourth District's holding in *People v. Stevens,* 315 Ill.App.3d 781, 248 Ill.Dec. 285, 733 N.E.2d 1283 (2000). In *Stevens,* the trial court summarily dismissed the defendant's motion for post-conviction DNA testing under section 116-3. In discussing section 116-3, the court in *Stevens* stated as follows:

"Section 116-3 does not state that a defendant is entitled to a hearing. Under defendant's interpretation of the statute, a trial court must hold a hearing on every motion regardless of the merits of the motion. Courts will not interpret a statute to guarantee a hearing as a matter of right without such language in the statute. [Citations.] We conclude that defendant was not entitled to a hearing as a matter of right and the trial court properly denied defendant's motion." *Stevens,* 315 Ill.App.3d at 784, 248 Ill.Dec. 285, 733 N.E.2d 1283.

The court in *Stevens* affirmed the denial of defendant's motion "because (1) section 116-3 of the Code does not require that the trial court conduct a hearing on defendant's petition, (2) identity was not the issue in the trial that resulted in defendant's conviction, and (3) the blood he sought to have tested would not produce new, noncumulative evidence materially relevant to defendant's assertion of actual innocence." *Stevens,* 315 Ill.App.3d at 784, 248 Ill.Dec. 285, 733 N.E.2d 1283.

In *Dyches,* 355 Ill.App.3d at 229, 291 Ill.Dec. 780, 824 N.E.2d 636, we recognized the need for the court to provide a defendant notice and an opportunity to be heard in the context of a section 2-1401 petition. We held that "summary dismissal, which is a drastic procedure, should not be read into the procedures provided by section 2-1401." *Dyches,* 355 Ill.App.3d at 229, 291 Ill.Dec. 780, 824 N.E.2d 636. However, we further held that "harmless error analysis should still be applied where defects in a section 2-1401 petition are patently incurable." *Dyches,* 355 Ill.App.3d at 229, 291 Ill.Dec. 780, 824 N.E.2d 636.

Similar to *Dyches,* harmless error analysis should apply where defects in a section 116-3 DNA motion are patently incurable. If dismissal of the DNA motion is inevitable and further proceedings would have little remedial effect and only delay dismissal, then summary dismissal should be affirmed based on harmless error. See *Anderson,* 352 Ill.App.3d at 948, 288 Ill.Dec. 350, 817 N.E.2d 1000 (summary dismissal of a section 2-1401 petition is subject to harmless error analysis); see *Sargent,* 357 Ill.App.3d 946, 294 Ill.Dec. 272, 830 N.E.2d 684 (reiterated *Anderson's* holding that summary dismissal, even if regarded as procedurally erroneous, remains subject to harmless error analysis, although *Sargent* addressed summary dismissal of a post-conviction petition, not summary dismissal of a section 2-1401 petition). We believe our application of the harmless error analysis in *182 the context of a section 116-3 DNA motion is consistent with the general duty of the reviewing court to consider the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

record as a whole and ignore harmless errors. See *Dyches,* 355 Ill.App.3d at 229, 291 Ill.Dec. 780, 824 N.E.2d 636 ("harmless error analysis should still be applied where defects in a section 2-1401 petition are patently incurable").

As previously noted, the court in *O'Connell* similarly recognized that harmless error analysis applies to the summary dismissal***203 **1194 of a DNA post-conviction petition. *O'Connell,* 365 Ill.App.3d at 877, 302 Ill.Dec. 841, 850 N.E.2d 278 ("following *Dyches,* we further hold that harmless error analysis applies to the summary dismissal of a post-conviction petition for DNA testing of evidence"). In *O'Connell,* the trial court dismissed the DNA post-conviction petition because defendant pled guilty to the charges, and therefore, the court reasoned, he could not meet the statutory requirement of showing that "identity was the issue in the trial." 725 ILCS 5/ 116-3(b)(1) (West 2004). However, in *O'Connell,* after considering the record as a whole, based on the underdeveloped nature of the record, the appellate court indicated that it could not conclude that any error in denying the DNA post-conviction petition was harmless:

"This court and the trial court could both benefit from a fuller development of the arguments concerning interpretation of section 116-3. Because we cannot conclude that the procedural defects had no prejudicial effect, we reverse and remand for proper notice of the court's *sua sponte* motion to dismiss and to give defendant an opportunity to respond to the dispositive motion." *O'Connell,* 365 Ill.App.3d at 878, 302 Ill.Dec. 841, 850 N.E.2d 278.

Thus, *O'Connell* recognized application of the harmless error analysis, but found the record in that particular case did not allow it to affirm the dismissal of the DNA post-conviction petition because the court could not conclude that any error in denying the DNA petition was in fact harmless error.

We are mindful that the *O'Connell* case is currently under consideration by the Illinois Supreme Court. *People v. O'Connell,* 365 Ill.App.3d 872, 302

Ill.Dec. 841, 850 N.E.2d 278 (2006), *appeal allowed,* 221 Ill.2d 662, 306 Ill.Dec. 281, 857 N.E.2d 680 (2006). We take no position on whether any error in denying the DNA petition in the context of the plea of guilty at issue in *O'Connell* was in fact harmless, as that is currently under consideration by the supreme court and not relevant to the issue in the instant appeal. *O'Connell,* 365 Ill.App.3d at 877, 302 Ill.Dec. 841, 850 N.E.2d 278. Rather, we rely on *O'Connell* only for the specific principle that the harmless error analysis can apply to the summary dismissal of a DNA petition. *O'Connell,* 365 Ill.App.3d at 877, 302 Ill.Dec. 841, 850 N.E.2d 278.

We note that defendant, in relying on *O'Connell,* argues that "the Illinois Appellate Court has held that summary dismissal of a motion for evidentiary DNA testing is illegal." That argument fails to take **183 into consideration that while *O'Connell* recognizes summary dismissal should not be read into section 116-3, *O'Connell* also recognizes that summary dismissal depending on the record as a whole can be recognized as error, but affirmed if harmless error. *O'Connell,* 365 Ill.App.3d at 877, 302 Ill.Dec. 841, 850 N.E.2d 278.

In the instant case, for the reasons previously discussed, we review the record as a whole and consider whether the summary dismissal of defendant's section 116-3 DNA motion was harmless error. Section 116-3 provides in pertinent part:

"(b) The defendant must present a *prima facie* case that

(1) identity was the issue in the trial which resulted in his or her conviction." 725 ILCS 5/116-3 (West 2004).

Defendant alleged in his motion that identity was the issue at trial. However, the well-developed record in the instant case directly rebuts that allegation. Unlike the court in *O'Connell,* which reviewed a record reflecting a defendant's guilty plea, in the instant case, we review a far more extensive record. Defendant brings the section 116-3 DNA motion as

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

869 N.E.2d 1185                                                                      Page 10
374 Ill.App.3d 172, 869 N.E.2d 1185, 312 Ill.Dec. 194
(Cite as: 374 Ill.App.3d 172, 869 N.E.2d 1185)

the result of ***204 **1195 his conviction of two
counts of aggravated criminal sexual assault after a
fully litigated jury trial in case No. 95 CR 14118.

On direct appeal of those two convictions, defend-
ant argued that since he admitted to having been
with the victim, other crime evidence was not relev-
ant to establish defendant's identity or intent.
*People v. Luczak,* 306 Ill.App.3d 319, 327, 239
Ill.Dec. 698, 714 N.E.2d 995 (1999). We affirmed
his conviction and held that the prior crime evid-
ence was relevant to defendant's intent and *modus
operandi. Luczak,* 306 Ill.App.3d at 327, 239
Ill.Dec. 698, 714 N.E.2d 995.

Moreover, the record reflects, defendant, in an in-
terview with the police before trial, admitted to the
police that he engaged in sex with the victim for
money. *Luczak,* 306 Ill.App.3d at 322, 239 Ill.Dec.
698, 714 N.E.2d 995. Defendant, during trial, ad-
mitted being with the victim during the time frame
when the victim testified the sexual assault oc-
curred; however, he denied having sexual contact
with the victim. *Luczak,* 306 Ill.App.3d at 323, 239
Ill.Dec. 698, 714 N.E.2d 995. According to defend-
ant's testimony he was driving around with the vic-
tim because she wanted to buy some cocaine and he
helped get the cocaine for her to purchase. *Luczak,*
306 Ill.App.3d at 323, 239 Ill.Dec. 698, 714 N.E.2d
995. Defendant testified that an argument occurred
as a result of a dispute over the cost of the cocaine
and defendant eventually kicked the victim out of
the car. *Luczak,* 306 Ill.App.3d at 323, 239 Ill.Dec.
698, 714 N.E.2d 995.

In response to defendant's argument on appeal that
since he admitted to being with the victim any evid-
ence of other crimes was not relevant to identity or
intent, we found other crime evidence was not ad-
missible to prove identity but, rather, to prove de-
fendant's intent and *modus operandi. Luczak,* 306
Ill.App.3d at 327, 239 Ill.Dec. 698, 714 N.E.2d
995. We affirmed *184 defendant's conviction.
*People v. Luczak,* 306 Ill.App.3d 319, 239 Ill.Dec.
698, 714 N.E.2d 995,*appeal denied,*185 Ill.2d 650,
242 Ill.Dec. 146, 720 N.E.2d 1101 (1999), *cert.*

*denied,*528 U.S. 1164, 120 S.Ct. 1182, 145 L.Ed.2d
1088 (2000).

As previously noted, defendant, in June of 1999,
filed a post-conviction petition seeking an order,
pursuant to section 116-3, to allow DNA testing of
evidence used in his trial. On July 7, 1999, the trial
court denied this petition, explaining that defendant
could have raised the issue of DNA testing on dir-
ect appeal but did not, and thus, the petition was
untimely and without merit. That ruling was not ap-
pealed by defendant. On March 27, 2000, defendant
filed a successive post-conviction petition alleging
various issues, but none of those issues were in any
way related to DNA testing. This petition was also
denied, and on appeal, this court affirmed the dis-
missal of the petition by the trial court. *People v.
Luczak,* No. 1-00-1645 (2001) (unpublished order
under Supreme Court Rule 23).

In the instant case, defendant, in 2005, filed a mo-
tion pursuant to section 116-3 to permit DNA test-
ing on evidence related to his trial under No. 95 CR
14118. However, the record reflects the inherent
defect in defendant's DNA motion is patently incur-
able. Judge Laws summarily dismissed defendant's
motion noting as follows:
    "One of the requirements is that identity is an is-
    sue at the time of trial. I have reviewed the find-
    ings by the Appellate Court in the defendant's
    case filed November 15th of 1999, and it does not
    appear that identity was an issue in this matter
    and that the defendant testified at his own trial
    that he was with the victim; although, he dis-
    agreed that, in ***205 **1196 fact, he had sexu-
    ally assaulted the victim."

Both the trial and appellate record directly and re-
peatedly rebut the fact that identity was an issue in
the trial which resulted in defendant's conviction.
We find, in the instant case, that regardless of
whether the circuit court erred in failing to provide
defendant with notice and an opportunity to be
heard before summarily dismissing his section
116-3 DNA motion, defendant could not have cured
the inherent defect in his DNA motion because he

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

869 N.E.2d 1185
374 Ill.App.3d 172, 869 N.E.2d 1185, 312 Ill.Dec. 194
(Cite as: 374 Ill.App.3d 172, 869 N.E.2d 1185)

Page 11

could not allege, or present a *prima facie* case that identity was the issue in the trial which resulted in his conviction as required by section 116-3. 725 ILCS 5/116-3 (West 2004). The summary dismissal of the DNA motion was inevitable and further proceedings would only have delayed the result. Accordingly, any procedural error was harmless.

For the reasons previously discussed, dismissal of defendant's DNA motion was proper because it was barred by the principles of *res judicata* and the record precluded defendant from presenting a *prima facie* case that identity was the issue in the trial which resulted in his *185 conviction. Moreover, any procedural error in summarily dismissing defendant's DNA motion was harmless error.

## II. *HABEAS CORPUS*

[6] Defendant's third contention is that the trial court erred in dismissing his petition for writ of *habeas corpus*. Defendant argues that the trial court summarily dismissed his petition in violation of the Habeas Corpus Act (Act) (735 ILCS 5/10-101 *et seq.* (2002)). Whether the trial court complied with the applicable statutory procedure is a question of law, and the standard of review is *de novo*. See *Woods v. Cole,* 181 Ill.2d 512, 516, 230 Ill.Dec. 204, 693 N.E.2d 333 (1998). Defendant cites to *People v. Winfrey,* 347 Ill.App.3d 987, 989, 283 Ill.Dec. 623, 808 N.E.2d 589 (2004), for the proposition that the trial court is not authorized under the Act to summarily dismiss a *habeas corpus* petition.

We recognize a dispute among the districts of this court as to whether a trial court may summarily dismiss a defendant's *habeas corpus* petition. Compare *People v. Land,* 366 Ill.App.3d 1183, 1187, 304 Ill.Dec. 860, 853 N.E.2d 937 (4th Dist.2006) (trial court has inherent authority to *sua sponte* dismiss *habeas corpus* petition), *People v. Tiller,* 361 Ill.App.3d 803, 806, 298 Ill.Dec. 76, 838 N.E.2d 969 (5th Dist.2005) (affirming summary dismissal of *habeas corpus* petition), and *People v. Carroll,*

351 Ill.App.3d 972, 287 Ill.Dec. 263, 815 N.E.2d 907 (1st Dist.2004) (summary denial of *habeas corpus* petition is proper), with *Winfrey,* 347 Ill.App.3d at 989, 283 Ill.Dec. 623, 808 N.E.2d 589 (2d Dist.2004) (dismissing *habeas corpus* petition without giving defendant notice and an opportunity to respond to trial court's action is reversible error).

In *Carroll,* this court summarily denied a *habeas corpus* petition where defendant did not raise any legal argument or cite legal authority to support his claim under the Act and no prejudice resulted from summary dismissal. *Carroll,* 351 Ill.App.3d at 975, 287 Ill.Dec. 263, 815 N.E.2d 907. In recognizing the dispute among the districts regarding summary dismissal, this court declined to follow the Second District's holding in *Winfrey. Carroll,* 351 Ill.App.3d at 975, 287 Ill.Dec. 263, 815 N.E.2d 907.

We note under the Act, a prisoner is entitled to an immediate release from incarceration if the term during which the prisoner may be legally detained has expired. 735 ILCS 5/10-123(2) (West 2000). Additionally, the Act provides that a prisoner may be discharged where, although ***206 **1197 the original imprisonment was lawful, some subsequent act, omission, or event has occurred entitling the prisoner to a discharge. 735 ILCS 5/10-124(2) (West 2000).

Defendant *pro se* filed what he labeled a "Petition for a Writ of *Habeas Corpus AdTestificandum.*" His petition noted that on "December 22, 2004, defendant caused to be filed Motion to allow DNA Testing and Discovery." Defendant further alleged in his petition *186 that his case "depends in large part on his own testimony" and requested to be present to manage the presentation of his case. Specifically, defendant alleged that he "should have the legal right to cross-examine any of the plaintiff's witnesses, and to have the court hear his case and to present appropriate rebuttal evidence." Defendant's petition does not identify any specific reason why he is entitled to *habeas corpus* relief under the Act; however, he contends that the Act does not allow

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

869 N.E.2d 1185
374 Ill.App.3d 172, 869 N.E.2d 1185, 312 Ill.Dec. 194
**(Cite as: 374 Ill.App.3d 172, 869 N.E.2d 1185)**

summary dismissal.

Similar to the defendant in this case, the defendant in *Carroll* argued on appeal that the Habeas Corpus Act did not allow summary dismissal of his petition. *Carroll*, 351 Ill.App.3d at 974, 287 Ill.Dec. 263, 815 N.E.2d 907. A review of the record reflects that defendant's petition, like the petition in *Carroll*, did not raise any legal issue cognizable under the Act, or raise any legal argument or legal authority to support his claim; accordingly, no prejudice resulted from the dismissal.

As previously noted, the trial court did not recharacterize defendant's pleading as a post-conviction petition. See *People v. Shellstrom*, 216 Ill.2d 45, 56, 295 Ill.Dec. 657, 833 N.E.2d 863 (2005) (in light of obstacles associated with successive post-conviction petition, trial court must give a *pro se* petitioner notice before recharacterizing a pleading as a first post-conviction petition). Defendant had already filed successive post-conviction petitions which had been resolved prior to the DNA motion and *habeas corpus* petition which were filed in the instant case. Rather than recharacterize his petition, the trial court addressed the precise petition presented and the precise relief requested by defendant and concluded that "the defendant's Petition for Writ of *Habeas Corpus* Relief in that he wants to appear in court for the hearing on the matter is also denied, and the matter is taken off call." That ruling directly addressed the relief requested in defendant's "Petition For Writ of *Habeas Corpus Ad Testificandum*," specifically to be present to manage his case, cross-examine witnesses and present rebuttal evidence. Defendant's petition failed to raise any legal argument or legal authority to support his *habeas corpus* claim and no prejudice resulted from the summary dismissal. For the reasons previously discussed, we conclude the trial court properly dismissed defendant's *habeas corpus adtestificandum* petition.

### III. FREE TRANSCRIPTS MOTION

[7] Defendant's final contention on appeal is that the trial court erred in denying him free copies of transcripts of the proceedings from his pleas of guilty and sentences in case Nos. 89 CR 6782, 89 CR 6783, and 89 CR 6784. On February 2, 1990, defendant pled guilty to one count of aggravated criminal sexual assault and one count of criminal *187 sexual assault charged under No. 89 CR 6782, two counts of criminal sexual assault under No. 89 CR 6783, and two counts of criminal sexual assault under No. 89 CR 6784. The trial court sentenced defendant to concurrent terms of incarceration of 10 years in No. 89 CR 6782; 6 years in No. 89 CR 6783; and 6 years in No.89 CR 6784.

Defendant's argument that he is entitled to free transcripts under Illinois Supreme ***207 **1198 Court Rule 605(b)(5) is without merit. 210 Ill.2d R. 605(b)(5). The State argues correctly that under Rule 605(b)(2), defendant must have filed a motion to vacate "within 30 days of the date on which sentence is imposed." 210 Ill.2d R. 605(b)(2). Defendant pled guilty on February 2, 1990, and did not file a motion to vacate his guilty pleas until July 1, 2005. Since defendant waited over 15 years to file a motion to vacate his guilty pleas, the time has expired and he is not entitled to free transcripts. Accordingly, the judgment of the trial court denying defendant's request for free transcripts is affirmed.

### IV. CONCLUSION

For the reasons previously discussed, dismissal of defendant's section 116-3 DNA motion was proper because it was barred by the principles of *res judicata* and the record precluded defendant from presenting a *prima facie* case that identity was the issue in the trial which resulted in his conviction under No. 95 CR 14118. Any procedural error in dismissing the section 116-3 DNA motion was harmless error because the inherent defect regarding the issue of identity in defendant's DNA motion was patently incurable. Defendant's petition for *habeas corpus* was properly dismissed. The defendant was not entitled to free transcripts from his

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

869 N.E.2d 1185
374 Ill.App.3d 172, 869 N.E.2d 1185, 312 Ill.Dec. 194
**(Cite as: 374 Ill.App.3d 172, 869 N.E.2d 1185)**

pleas of guilty to a series of sexual assault charges
entered in February 1990 under Nos. 89 CR 6782,
89 CR 6783 and 89 CR 6784.

The judgment of the circuit court of Cook County is
affirmed

Affirmed.

TULLY and GALLAGHER, JJ., concur.
Ill.App. 1 Dist.,2007.
People v. Luczak
374 Ill.App.3d 172, 869 N.E.2d 1185, 312 Ill.Dec.
194

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

105065

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

January 30, 2008


Hon. Lisa Madigan
Attorney General, Criminal Appeals Div.
100 W. Randolph St., 12th Flr.
Chicago, IL 60601

No. 105065 - People State of Illinois, respondent, v. Theodore
Luczak, petitioner.  Leave to appeal, Appellate
Court, First District.


The Supreme Court today DENIED the petition for leave to appeal in the above entitled cause.

The mandate of this Court will issue to the Appellate Court on March 6, 2008.

EXHIBIT E

IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THEODORE LUCZAK,                      )
                                      )
            Petitioner,               )          No. 01 CV 09352
                                      )
        v                             )          Judge Ronald A Guzman
                                      )
JAMES M. SCHOMIG, Warden,             )
Pontiac Correctional Center,          )
                                      )
            Respondent.               )

Before this court is Theodore Luczak's ("Luczak") petition for writ of habeas

corpus under 28 U.S.C. §2254. For the following reasons, this court denies the petition.

### FACTUAL BACKGROUND

DOCKETED

MAR 2 7 2003

When considering a habeas corpus petition we presume that the factual

determinations of the state court as true. 28 U.S.C. § 2254(e)(1). Thus, we adopt the

facts as set forth by the Illinois Appellate Court. *People v. Luczak*, 306 Ill. App. 3d 319,

714 N.E.2d 995, 239 Ill. Dec. 698 (1st Dist. 1999).

Following a jury trial defendant was convicted on two counts of aggravated

criminal sexual assault. Prior to trial, the State moved to introduce evidence of

defendant's (hereinafter referred to as "defendant" or "Luczak") prior crime, arguing that

evidence of the other crime established defendant's criminal intent at the time of the

charged crime and Luczak's *modus operandi*. Over objection, the trial court granted the

motion, and stated that the evidence of the other crime demonstrated defendant's *modus*

*operandi* and criminal intent.

EXHIBIT F

Prior to trial, Luczak motioned to quash his arrest and suppress his oral confession. The motion to quash his arrest was denied based upon the determination that the police officers had probable cause to arrest Luczak in the doorway of his residence. Luczak had also been identified in a line up by the victim and her sister. The motion to suppress the oral confession was also denied. The trial judge concluded that Luczak had failed to present "clear and convincing" evidence that he did not knowingly, intelligently and voluntarily waived his Miranda rights, and that the state did establish a *prima facie* case that the defendant knowingly, intelligently and voluntarily waive his Miranda rights.

During trial, Luczak motioned for permission to represent himself without the help of a licensed attorney. After the trial judge inquired to Luczak's ability to represent himself, pursuant to *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562(1975), the trial judge ruled that Luczak was able and fit to represent himself during the remainder of the trial.

Also during trial, Luczak asked the trial judge to enter an order allowing him more time in the Law Library located in the Cook County Jail. Given that Luczak was being held in custody at that time, thus the trial judge denied Luczak's request stating that this request was for the prison officials to decide, and not the court.

After the jury instructions were given, the jury foreperson requested a copy of the supplemental police report for review in the jury deliberation room. The trial judge denied such a request based upon the Illinois Rules of Criminal Procedure §803 governing hearsay. After deliberation, the jury announced that the state had proven beyond a reasonable doubt that Luczak was guilty of two counts of aggravated criminal sexual assault.

2

## PROCEDURAL HISTORY

On July 7, 1997 Luczak, represented by an appointed public defender of Cook County, filed his Direct Appeal in the First District of the State of Illinois. Luczak raised one issue on direct appeal; that the trial court erred in admitting the evidence of his prior conviction of aggravated criminal sexual assault. The First District Appellate Court affirmed Luczak's conviction for aggravated criminal sexual assault on June 14, 1999 in a published opinion. *People v. Luczak*, 306 Ill.App.3d 319, 714 N.E.2d 995(1st Dist. 1999). The appellate court held that there were significant similarities between the two crimes and the evidence was entered to prove a *modus operendi*, intent, identity, or motive, which was in accordance with Illinois's law regarding admissibility of other crimes.

On July 13, 1999, Luczak filed a *pro se* petition for leave to appeal to the Illinois State Supreme Court. Luczak raised four issues: (1) that the trial court and the appellate court erred in granting the State's motion to enter evidence of a prior conviction for an aggravated criminal sexual assault; (2) that the trial court erred when the jury was instructed to consider the evidence of Luczak's prior conviction for aggravated criminal sexual assault for the limited purpose of establishing Luczak's identity and intent; (3) that the trial court erred in admitting evidence of an alleged oral confession; and (4) that the trial court abused it's discretion for allowing a conversation between the judge and a juror outside the presence of Luczak. On October 6, 1999, the Illinois State Supreme Court denied Luczak's petition pursuant to Illinois State Supreme Court Rule 23. *People v. Luczak*, unpublished order dated October 6, 1999.

Luczak then filed a *pro se* petition for Writ of Certiorari to the United States

3

Supreme Court on November 23, 1999. Luczak raised one issue; that his sixth and

fourteenth amendments were violated because the trial court erred by admitting evidence

of a prior conviction for aggravated sexual criminal assault. The United States Supreme

Court denied his petition on February 22, 2000. *People v. Luczak,* 528 U.S. 1164, 120

S.Ct. 1182, 145 L.Ed.2d 1088(2000).

On March 27, 2000, Luczak filed a *pro se* post conviction petition. Luczak raised

eight issues: (1) that his appellate counsel was ineffective because his counsel failed to

review the total disclosure of the record and failed to raise all meritorious claims on

direct appeal that appeared on record; (2) that his fifth and fourteenth amendments were

violated because the trial court erred in admitting evidence of a prior conviction for

aggravated criminal sexual assault; (3) that his fourth and fourteenth amendments were

violated by the trial court's denial of his motion to quash arrest; (4) that his fifth and

fourteenth amendments were violated by the trial court's denial of his motion to suppress

his oral confession; (5) that his fifth and fourteenth amendments were violated when the

trial Judge denied admitting a supplemental police report as substantive evidence; (6) that

his sixth and fourteenth amendments were violated when the trial Judge abused his

discretion in that the judge had a conversation with a juror outside the presence of

Luczak; (7) that his sixth and fourteenth amendments were violated because the trial

Judge denied Luczak adequate access to legal materials and a private investigator; (8)

that his sixth and fourteenth amendments were violated because the trial Judge abused his

discretion in denying Luczak's petition for a new trial when the State failed to prove

Luczak's guilt beyond a reasonable doubt. Luczak's post conviction was

denied on April 6, 2000.

On April 5, 2001, Luczak's appointed attorney for his post conviction appeal filed a motion to withdraw as counsel pursuant to *Pennsylvania v. Finley*. Luczak filed a response to the motion to withdraw on May 22, 2001. Luczak raised seven issues in his response: (1) that the trial court erred in summarily dismissing Luczak's post conviction petition without an evidentiary hearing; (2) that his appellate counsel was ineffective because the counselor failed to raise Miranda issues; (3) that the trial court erred in refusing to admit supplemental police reports as substantive evidence; (4) that the State failed to prove beyond a reasonable doubt that Luczak knowingly, intelligently, and voluntarily waived his Miranda warnings; (5) that the trial court erred in the denying his motion to quash arrest and in denying his motion to suppress statements; (6) that the trial court erred in holding Luczak, a *pro se* litigant, to the same standards as a licensed attorney; (7) the trial court erred in denying Luczak the right to effective access to the Cook County Jail Law Library while he was being held in custody. On June 25, 2001, in an unpublished order, the Appellate Court found no issues of arguable merits, granted the appointed attorney's motion to withdraw as counsel pursuant to *Pennsylvania v. Finley*, and affirmed the judgment of the circuit court.

Luczak filed his second *pro se* petition for leave to appeal to the Illinois State Supreme Court on August 6, 2001. Luczak raised eight issues: (1) that the trial court erred in summarily dismissing Luczak's post conviction petition without an evidentiary hearing; (2) that the Appellate court erred in dismissing Luczak's post conviction appeal based upon his appointed counsel's motion to withdraw pursuant to *Pennsylvania v. Finley*; (3) that his appellate counsel was ineffective because the counselor failed to raise all meritorious claims and failed to review the entire record before filing the appellate

brief; (4) that the trial court erred in refusing to admit a supplemental police report as

substantive evidence; (5) that the trial court erred in denying Luczak's motion to suppress

his oral confession; (6) that the trial court erred in denying Luczak's motion to quash

arrest; (7) that the trial court erred in holding Luczak, a *pro se* litigant, to the same

standards as a licensed attorney, denying him effective access to the law library at Cook

County Jail, and failing to appoint Luczak standby counsel; (8) that the trial court erred

in denying Luczak's motion for a new trial because the State failed to prove Luczak's

guilt beyond a reasonable doubt. The Illinois State Supreme Court denied Luczak's

petition for leave to appeal in an unpublished order on October 3, 2001. Luczak then

filed this *pro se* writ of habeas corpus in the United States District Court for the Northern

District of Illinois on January 14, 2002.

## DISCUSSION

Luczak raises nine claims: (1) He was denied a fair trial because his prior

conviction of aggravated criminal sexual assault was wrongfully admitted into evidence

during his trial; (2) he received ineffective assistance of appellate counsel because his

counsel failed to review all meritorious claims and failed to review the entire record prior

to filing his appellate brief; (3) he was denied due process because during the pre-trial

motion to suppress statements, after the State established a *prima facie* case, the trial

court erred in shifting the burden to the petitioner to prove that he did not waive his

Miranda rights; (4) he was denied due process because at a pre-trial motion to quash

arrest the State did not present enough evidence which would have established that the

police officers had probable cause at the time of his arrest; (5) he was denied due process

because the trial Judge did not allow a supplemental police report to be admitted to the

6

jury as substantive evidence; (6) he was denied due process because the statutes

governing *pro se* litigants were violated because he was never appointed standby counsel

nor did the Judge grant an order for petitioner to be allowed extended time in the Cook

County Jail Law Library; (7) he was denied due process because during the State's

opening arguments, the State included inaccurate information that was contrary to the

evidence presented at trial; (8)he was denied due process because the trial court

dismissed his post conviction petition without an evidentiary hearing; (9) he was denied

effective assistance of counsel for post conviction appeal when the Appellate court

granted his appointed counsel's motion to withdraw as counsel pursuant to *Pennsylvania*

*v. Finley.*

## A. STANDARD OF REVIEW

After the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), the

law of habeas corpus requires that the federal courts review state court holdings with

deference to state-court fact findings and is limited to ensuring that the state courts

comply with "clearly established federal law." The habeas corpus statute specifically

states:

> (d) An application for a writ of habeas corpus on behalf
> of a person in custody pursuant to the judgment of
> the a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in
> State court proceedings unless the adjudication of
> the claim-- (1) resulted in a decision that was
> contrary to, or involved an unreasonable application
> of, clearly established Federal law, as determined by
> the Supreme Court of the United States; or (2) resulted
> in a decision that was based on an unreasonable
> determination of the facts in light of the evidence
> presented in the State court proceeding.

28 U.S.C. §2254.

"The 'unreasonable application' clause of 28 U.S.C. §2254(d)(1) governs alleged errors in the state court's application of Supreme Court precedent to the facts of the case." *United States ex rel. Jones v. Chrans*, 187 F.Supp. 2d 993, 1000 (N.D.Ill. 2002). *See Boss v. Pierce*, 263 F.3d 734, 739 (7th Cir. 2001); *see also Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1520-21, 146 L.Ed.2d 389 (2000). Only when the application of constitutional law is unreasonably erroneous may this court grant habeas relief. *Williams v. Taylor* at 1520-21, 120 S.Ct. 1495(2000). *See Washington v. Smith*, 219 F.3d 620, 628 & n.5 (7th Cir. 2000) *See also United States ex rel. Jones v. Chrans*, 187 F.Supp.2d 993(N.D.Ill. 2002).

Under 28 U.S.C. §2254(d)(2), "state court factual findings that are reasonably based on the record are presumed correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence." *Todd v. Schomig*, 283 F.3d 842, 846(7th Cir. 2002) *See* 28 U.S.C. §2254(e)(1); *See also Cossel v. Miller*, 229 F.3d 649, 651 (7th Cir. 2000). This court will grant relief based upon the habeas petition only if the petitioner offers substantial evidence that the state court factual findings were incorrect. *Rodriguez v. Peters*, 63 F.3d 546, 554 (7th Cir. 1995).

## B. DOCTRINE OF EXHAUSTION

For this federal court to review the claims Luczak asserts in this habeas corpus petition, 28 U.S.C. §2254(b)(1)(A) requires that Luczak first exhaust all of his state court remedies. Exhaustion "'refers only to remedies still available at the time of the federal petition,' it requires federal courts to ask whether an applicant for federal relief could still get the relief he seeks in the state system." *O'Sullivan v. Boerckel*, 526 U.S. 838, 851, 119 S.Ct. 1728, 144 L.Ed.2d 1(1999) *Quoting to Engle v. Isaac*, 456 U.S. 107, 125-126,

n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783(1982). This requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640(1991); *rehearing denied* 501 U.S. 1277, 112 S.Ct. 2546, 115 L.Ed.2d 1109 (1991).

Luczak is no longer eligible for the relief he seeks from the Illinois state-court system because he has filed claims in the Illinois trial courts, Illinois appellate court, and the Illinois State Supreme court in a timely manner. Luczak has no other available state-court remedies. Therefore Luczak has exhausted his state-court remedies and this court may properly review his habeas corpus petition.

## C. PROCEDURAL DEFAULT

Even though Luczak has exhausted his state court remedies, Luczak is also required to raise his claims through "one complete round" of the appellate process or risk procedural default. *O'Sullivan v. Boerckel* at 845, 119 S.Ct. 1728(1999). In recognizing Illinois' established two-tiered discretionary appellate review process, the United States Supreme Court in *Boerckel,* held that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" or the petitioner risks procedural default. *Id.*

Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson,* 965 F.2d 1453, 1458 (7th Cir. 1992); *cert. denied* 508 U.S. 962, 113 S.Ct. 2935, 124 L.Ed.2d 685 (1993). Like the exhaustion

requirement, the rule of procedural default is also "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson* at 731, 111 S.Ct. 2546(1991). Luczak has procedurally defaulted on habeas claims one, three, four, five, six, and seven because he has failed to raise those claims in "one complete round" of Illinois' established appellate review process.

Claim one of Luczak's habeas corpus petition alleges that the trial court erred in admitting evidence of a prior criminal sexual assault conviction. Luczak raised this issue in his direct appeal, his initial *pro se* petition for leave to appeal, and his *pro se* post conviction appeal. Luczak failed to raise this issue in his *pro se* appeal of his post conviction and in his final *pro se* petition for leave to appeal to the Illinois State Supreme Court. Under the law established in *Boerckel,* an Illinois petitioner is required to raise the issue to the highest State Supreme Court, even if the appellate review is discretionary. *O'Sullivan v. Boerckel* 119 S.Ct. 1728(1999)

Luczak had the opportunity to raise this issue in all of his petitions but without reason Luczak failed to raise this issue to the Illinois State Supreme Court. By failing to raise this issue in his *pro se* post conviction appeal and his *pro se* petition for leave to appeal, Luczak has failed to complete "one full round" of the Illinois' appellate review process. Thus, Luczak has procedurally defaulted on this issue and this court is barred from further reviewing the merits of this habeas claim. Id. at 848, 119 S.Ct. 1728(1999)(Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims.) *See Coleman v. Thompson* at 731-732, 11 S.Ct. 2546(1991); *Engle v. Isaac* at 125-126,

n.28, 102 S.Ct. 1558(1982).

Claim three in Luczak's habeas corpus petition alleges he was denied due process because during the pre-trial motion to suppress statements, after the State established a *prima facie* case, the trial court erred in shifting the burden to the petitioner to prove that he did not waive his Miranda rights.  Claim four in Luczak's habeas corpus petition alleges that the trial court erred in denying his motion to quash arrest.  In Luczak's fifth habeas claim, he alleges that the state court erred in denying his motion to admit a supplemental police report as substantive evidence.  Luczak objected to all three of these habeas claims at trial, but Luczak failed to raise these issues on direct appeal.

Due to the objections made at trial, Luczak "preserved" the right to raise these issues in his direct appeal. *People v. Enoch*, 122 Ill.2d 176, 186, 119 Ill.Dec. 265, 522 N.E.2d 1124(Ill. 1988)(Alleged errors of the trial court must be objected to at trial and specified in a post-trial motion in order to preserve them for appeal.); *People v. Armstead*, 322 Ill.App.3d 1, 748 N.E.2d 691, 254 Ill.Dec. 973 (1st Dist. 2001).  Luczak's failure to raise those issues on direct appeal barred him from raising those issues in post conviction proceedings, preventing the issue from being raised to the Illinois State Supreme Court. *Post Conviction Hearing Act*, 725 ILCS 5/122-1 et. seq. (West 1994) (In post conviction proceeding, any issues which could have been raised on direct appeal, but were not, are procedurally defaulted...).  This "explicit finding of [Luczak's] state law procedural default prevents habeas review because it constitutes an 'independent and adequate state ground' for the result reached." *Zamora v. Pierson*, 158 F.Supp.2d 830, 837(N.D.Ill. 2001) *Citing to Rivera v. Lane*, 506 U.S. 920, 113 S.Ct. 335, 121 L.Ed.2d 253(1992).  Luczak's failure to raise habeas claims three, four, and five in his direct

11

appeal has procedurally defaulted those claims from review by this court.

Luczak's sixth habeas claim alleges that the trial judge abused his discretion when he failed to appoint Luczak standby counsel during his trial. Luczak's seventh habeas claim alleges that the Assistant State's Attorneys included information in their opening statement that was inconsistent with evidence presented at trial. Luczak failed to object to these alleged errors at trial, which bars him from raising these issues in his direct appeal. *People v. Ross*, 329 Ill.App.3d 872, 769 N.E.2d 953, 264 Ill.Dec.116 (1st Dist. 2002) *See People v. Enoch*, 522 N.E.2d 1124(1988). Luczak failed to follow the state rule requiring that it must be raised at trial or on direct appeal, prior to raising the issue to the Illinois State Supreme Court. He has procedurally defaulted habeas claims six and seven from habeas review. *Engle v. Isaac*, 102 S.Ct. 1558(1982).

### D. FULL AND FAIR OPPORTUNITY FOR LITIGATION IN THE STATE COURTS

Luczak has not only failed to raise claims one, three, four, five, six, and seven in "one complete round" of the Illinois' appellate review process, but he has also failed to allow the state courts to fully and fairly litigate those issues. For a federal court to review a claim raised in a habeas corpus petition, the petitioner must also allow the state courts to have an opportunity to "fully and fairly" review the claim raised or the petitioner risks procedural default. *Momient-El v. DeTella*, 118 F.3d 535, 538, *cert denied*, 522 U.S. 984, 118 S.Ct. 448, 139 L.Ed.2d 384 (7th Cir. 1997). *See Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). When it is decided that the state courts have not had a full and fair opportunity to consider the constitutional claim, then the claim is considered to be procedurally defaulted, thus barred from review by the federal courts. *O'Sullivan v. Boerckel*, 119 S.Ct. 1728(1999). *See Rodriguez v.*

*Scillia,* 193 F.3d 913, 916 (7th Cir. 1999).

For Luczak to be considered to have fully and fairly litigated his claims in the state courts he "must have placed both the operative facts and the controlling legal principals before the state courts." *Chambers v. McCaughtry,* 264 F.3d 732, 738 (7th Cir. 2001). *See Ellsworth v. Levenhagen,* 248 F.3d 634, 639 (7th Cir. 2001); Wilson v. Briley, 243 F.3d 325, 327 (7th Cir. 2001). The court in *O'Leary* set forth four applicable factors clarifying the fully and fairly litigated requirement. The court stated:

> If the petitioner's argument to the state court did not:
> (1) rely on pertinent federal cases employing constitutional
> analysis; (2) rely on state cases applying constitutional
> analysis to a similar factual situation; (3) assert the claim in
> terms so particular as to call to mind a specific constitutional
> right; or (4) allege a pattern of facts that is well within the
> mainstream of constitutional litigation, then this court will
> not consider the state courts to have had a fair opportunity to
> consider the claim.

*Verdin v. O'Leary,* 972 F.2d 1467, 1473-1474(7th Cir. 1992). *See Bocian v. Godinez,* 101 F.3d 465, 469 (7th Cir. 1996); *Griffin v. McCaughtry,* 986 F.Supp. 570, 573(E.D.Wis. 1997). The court in McCaughtry further clarified that "[a] mere 'passing reference' to a constitutional issue certainly does not suffice [for federal review.]" *Chambers v. McCaughtry* at 738, 264 F.3d 732(2001) *Citing to Fortini v. Murphy,* 257 F.3d 39, 44 (1st Cir. 2001). In *Wilks,* the court noted that mere "variations in the same claim rather than a different legal theory will not preclude exhaustion." *Wilks v. Israel,* 627 F.2d 32, 38 (7th Cir. 1980). *See Chambers v. McCaughtry,* 264 F.3d 732(2001).

Luczak failed to give the State courts the first opportunity to fully and fairly litigate habeas claims one, three, four, five, six, and seven. Luczak failed to articulate those claims in a specific fact pattern within the "mainstream of constitutional litigation."

13

*Verdin v. O'Leary,* 972 F.2d 1467(1992). Luczak also failed to support those allegations

by relying "on pertinent federal cases employing constitutional analysis" or by relying

"on state cases applying constitutional analysis to a similar factual situation." *Verdin v.*

*O'Leary* at1473-1474, 972 F.2d 1467(1992). *See Boclan v. Godinez* at 469, 101 F.3d

465(1996); *Griffin v. McCaughtry* at 573, 986 F.Supp. 570(1997). Therefore, Luczak has

failed to give the Illinois State courts the first opportunity to "fully and fairly" litigate

habeas claims one, three, four, five, six, and seven. Luczak's failure constitutes

procedural default, which, under 28 U.S.C. §2254, bars this court from reviewing the

merits of the allegations asserted in habeas claims one, three, four, five, six, and seven.

## E. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In claim two of his habeas corpus petition, Luczak alleges that he received

ineffective assistance of appellate counsel on direct review, which violated his right

guaranteed by the sixth amendment of the Constitution of the United States. Luczak

alleges that his counsel failed to raise all meritorious claims in his direct appeal and

failed to review the entire record before filing his appellate brief. "The Sixth

Amendment right to counsel is the right to effective assistance of counsel, and the

benchmark for judging any claim of ineffectiveness must be whether counsel's conduct

so undermined the proper functioning of the adversarial process that the trial cannot be

relied on as having produced a just result." *Strickland v. Washington* at 669, 104 S.Ct.

2052(1984).

In reviewing counsel's performance, the courts used an objective standard of

reasonableness, "with a highly deferential presumption in favor of the reasonable

exercise of professional judgment." *U.S. v. Hodges,* 259 F.3d 655, 658 (7th Cir. 2001)

14

*See Strickland v. Washington*, 466 U.S. 668, 669, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The purpose of this standard is "not to improve the quality of legal representation,

although that is a goal of considerable importance to the legal system. The goal [of this

standard] is simply to ensure that criminal defendants receive a fair trial." *Kubat v.

Thieret*, 867 F.2d 351, 359(7th Cir. 1989) Quoting *Strickland v. Washington* at 689, 104

S.Ct. 2052(1984); *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83

(1955). The Supreme Court in *Strickland* established that the standard requires the

"defendant [to] bear the burden of showing: (1) that counsel's performance was deficient;

and (2) that the deficient performance prejudiced the defense." *Kubat v. Thieret* at 867,

F.2d 351(1989) See *Strickland v. Washington*, 466 U.S. 668, 669, 104 S.Ct. 2052, 80

L.Ed.2d 674 (1984).

In alleging that his appellate counsel's performance was deficient, Luczak is

required to "identify the acts or omissions [committed by his] counsel that are

unreasonable." *U.S. v. Hodges* at 658, 259 F.3d 655(2001) *Citing to Strickland v.

Washington*, 104 S.Ct. 2052(1984). This court must then "determine whether, in light of

all the circumstances, the identified acts or omissions were outside the wide range of

professionally competent assistance." Id. Luczak has failed to specifically identify acts

or omission that are unreasonable.

Luczak has offered no substantial evidence in support of his allegations that his

counsel was ineffective. Luczak includes a letter written to him by his appellate counsel,

but the content of the letter does not prove that counsel did not fully review the entire

record before filing the brief nor does it prove that counsel failed to raise all meritorious

claims in the appellate brief.

15

The letter indicates that his counsel did file the appellate brief in a timely manner
and that she returned the record so the State could withdraw it and use it for its response
brief. Since the State had withdrawn the record, Luczak's counsel had to order a copy of
the proceedings. This does not prove that his counsel failed to raise all meritorious
claims nor does it prove that counsel failed to review the entire record prior to the filing
of the direct appellate brief. Luczak has failed to identify any specific acts supported by
substantial evidence that his appellate counsel was ineffective and this court is therefore
barred from granting Luczak's habeas corpus petition on this issue.

In identifying the specific acts or omissions that constitute ineffective assistance
of counsel, Luczak must also demonstrate that these acts prejudiced the outcome of the
trial court. *Strickland v. Washington* at 687, 104 S.Ct. 2052(1984). "Not just any
deficiency in counsel's performance will do, however; the assistance must have been so
ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446,
451, 120 S.Ct. 1587, 146 L.Ed.2d 518(2000) *See Murray v. Carrier*, 477 U.S. 478, 490-
492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). "To succeed on a Sixth Amendment of
ineffective assistance of counsel, defendant must show that there is a *reasonable*
*probability*, which is a probability sufficient to undermine confidence in the outcome,
that but for counsel's unprofessional errors, result of the proceeding would have been
different." U.S.C.A. Amend. 6. *See Strickland v. Washington*, 104 S.Ct. 2052(1984).

The aggravating circumstances proved at Luczak's trial (i.e. the identification
made by the victim, the testimony of a prior victim that established intent, the oral
confession, etc...) were so overwhelming that even if Luczak's appellate counsel did fail
to review the entire record before filing the brief, it would not have prejudiced the

16

outcome of the trial. The Appellate court would not have overturned Luczak's conviction for criminal sexual assault. Luczak has clearly failed to identify any specific acts or omissions committed by his appellate counsel that would have prejudiced the outcome of his trial.

## F. EXCEPTIONS TO PROCEDURAL DEFAULT

Even though Luczak has procedurally defaulted on claims one, three, four, five, six, and seven, if he can show cause for the default and actual prejudice, or demonstrate that a failure to consider the claim will result in a fundamental miscarriage of justice, then habeas review may still be available. *Resnover v. Pearson* at1468, 965 F.2d 1453(1992). *See Coleman v. Thompson* at 750, 11 S.Ct. 2546(1991); *Anderson v. Cowen* 227 F.3d 899-900(7th Cir. 2000).

Luczak is required to establish a causal claim "as an independent [constitutional] claim before it may be used to establish cause for a procedural default." *Murray v. Carrier* at 489, 106 S.Ct. 2639(1986) *See Moment-El v. DeTella*, 118 F.3d 535, 538 (1997). To demonstrate prejudice, the petitioner must show "not merely that the errors of his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Lemons v. O'Sullivan*_54, F.3d 357, 362, *cert. denied*, 516 U.S. 993, 116 S.Ct. 528, 133 L.Ed.2d 434 (7th Cir. 1995) *Citing to: United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816(1982).

Luczak failed to demonstrate that any independent constitutional violation occurred which caused him to default on his claim of due process violations. Luczak makes a speculative allegation that due to the errors of his appellate counsel, his claims

17

alleging due process violations should not be defaulted. This court has determined that Luczak's claim of ineffective assistance of appellate counsel cannot act as the "cause" for the defaults.

This court applied Luczak's alleged violation of his sixth amendment right to effective assistance of counsel to the standard established in *Strickland v. Washington*. After the application of the *Strickland* standard, this court concluded that Luczak's appellate counsel was not ineffective. There was no substantial evidence presented that supported the allegation that counsel did not review the entire record before filing the brief, nor would any of the alleged errors prejudice the outcome of the trial court. Thus, Luczak's claim of ineffective assistance of counsel is not an independent constitutional violation. Luczak failed at his attempt to have the ineffective assistance of appellate counsel claim act as the "causal claim" that would have allowed defaulted claims to be reviewed in this court.

Luczak also failed to demonstrate that without review of the alleged due process violations a fundamental miscarriage of justice would result. The fundamental miscarriage of justice exception applies "[i]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant a writ even in the absence of a showing of cause and [prejudice] for procedural default." *Murray v. Carrier* at 496, 106 S.Ct. 2639(1986). See *Lemons v. O'Sullivan* at 361, 54 F.3d 357(1995). Luczak's petition never proclaims that he is actually innocent of the crime, Luczak only alleges trial errors, which denied him the right to due process. Therefore, the fundamental miscarriage of justice exception does not apply to this habeas corpus petition.

18

## G. FOR PURPOSES OF HABEAS REVIEW A POST CONVICTION EVIDENTIARY HEARING IS NON-COGNIZABLE

In claim eight of Luczak's habeas corpus petition he alleges that he was denied due process because he was denied an evidentiary hearing on the issues he raised in his post conviction petition. A state court is not required nor obliged to either provide a post conviction hearing or provide counsel under the United States Constitution. *Pennsylvania v. Finley,* 481 U.S. 551, 556, 107 S.Ct. 1990, 95 L.Ed.2d 539(1987) *See U.S. v. MacCollom,* 426 U.S. 317, 323, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976).

Under the Illinois Post Conviction Hearing Act, prior to a hearing, a court may summarily dismiss the petition if the trial court determines that the petition is "frivolous or ... patently without merit." 725 Ill.Comp.Stat. 5/122-2 (2000). The United States Supreme Court, on several occasions has recognized that this "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail...[is] the hallmark of effective appellate advocacy." *Jones v. Barnes,* 463 U.S. 745, 751-752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) *See Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). The court in *Boerckel* also held that "discretionary review rules not only provide an effective tool for apportioning limited resources, but also foster more useful and effective advocacy." *O'Sullivan v. Boerckel* at 858, 119 S.Ct. 1728(1999).

The Illinois Appellate court was not constitutionally required to provide an evidentiary hearing for the claims Luczak raised in his post conviction petition. Luczak's habeas corpus claim does not raise a constitutional question because it alleges that Illinois' post conviction proceedings are inherently unconstitutional. Following the holding in *Pierson,* Luczak's claim of "error or defects in the state post-conviction

19

proceedings do not raise constitutional questions cognizable in habeas corpus proceedings." *Zamora v. Pierson* at 837, 158 F.Supp.2d 830(2001). Luczak's claim that he was denied due process because the Appellate court erred in denying him a post conviction evidentiary hearing for the issues raised in his post conviction petition is barred from review in this court.

## H. FOR PURPOSES OF HABEAS REVIEW A FINLEY MOTION IS NON-COGNIZABLE

In claim nine of Luczak's habeas corpus petition he alleges that he was denied due process when the appellate court granted his appointed post conviction appellate counsel's petition to withdraw pursuant to *Pennsylvania v. Finley*. The Supreme Court in *Finley*, held that a state court is not constitutionally required to provide counsel during the discretionary appellate review process. *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539(1987).

In *Wainwright v. Torna*, the court held that a criminal defendant does not have a federal constitutional right to counsel to pursue discretionary state appeals. *Wainwright v. Torna*, 455 U.S. 586, 587, 102 S.Ct. 1300; 71 L.Ed.2d 475(1982); *Anderson v. Cowen*, 227 F.3d 893, 899-900(7th Cir. 2000). As a criminal defendant in the Illinois criminal justice system, Luczak does not have a constitutional right to post conviction appellate counsel because the review of a post conviction appeal is discretionary. 725 Ill.Comp.Stat. 5/122-2(2000). Therefore, Luczak cannot claim that a constitutional violation occurred when the Appellate court granted his appointed counsel's motion to withdraw pursuant to *Pennsylvania v. Finley*. Under 28 U.S.C. §2254, Luczak's habeas claims are limited to where "[a specific] error results in a denial of a specific constitutional right." *United States ex. rel McDaniel v. Cooper*, unpublished order,

20

N.D.Ill. Sept. 23, 1998, No. 97 C 3221. Luczak was not denied a specific constitutional right because there is no constitutional right of appointed counsel for post conviction appellate proceedings. Therefore, a specific error did not result in the denial of a specific constitutional violation. Thus, this claim is non-cognizable and this court is barred from reviewing Luczak's habeas claim nine.

Luczak further alleges that the error occurs in the application of the established federal law, which does not give an Illinois State prisoner a constitutional right to counsel in discretionary review proceedings. If the alleged error occurs in a state collateral proceeding, federal habeas corpus cannot serve as a remedy because the error is unrelated to the defendant's original reason for confinement. *Jackson v. Duckworth*, 112 F.3d 878, 879(7th Cir. 1997). Luczak's habeas claims of errors in discretionary proceedings do not specifically violate due process nor do these claims have any bearing on his conviction for aggravated criminal sexual assault. Luczak's claims are non-cognizable and are therefore barred from review by this court.

## CONCLUSION

Petitioner Luczak has procedurally defaulted on habeas claims one, three, four, five and six. Luczak has failed to raise these claims in "one complete round" of Illinois' state court system prior to raising the claims in his habeas petition. Luczak failed to show cause for these procedure defaults and prejudice thereafter. Therefore, Luczak has failed to give the state courts a "full and fair opportunity" to litigate the constitutional issues raised in his habeas corpus petition.

Claim two of Luczak's habeas petition alleges that his appellate counsel was ineffective. With regard to the alleged attorney errors, Luczak failed to show prejudice

21

as a result of those errors. Therefore, the claim of ineffective assistance of appellate counsel failed to meet the standard established in *Strickland v. Washington*, 104 S.Ct. 2052(1984).

Claims eight and nine are non-cognizable for habeas review because the allegations are not "contrary to clearly established federal law." 28 U.S.C.A. §2254. For purposes under 28 U.S.C. §2254, Petitioner Luczak's habeas corpus petition is denied. This case is hereby terminated and all other pending motions stricken as moot (##16-1, 20-1, 21-1 and 22-1). Luczak's Response to Respondent's answer was comprehensive and well written. Obviously, he has had the support of counsel at the jail house. *Farmer v. Haas*, 990 F. 2d 319, 322 (7th Cir. 1993). This is a final and appealable order.

SO ORDERED:                                     ENTERED:  3/24/03


RONALD A. GUZMAN
United States Judge

Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01CV9352 | **DATE** | 5/1/03 |
| **CASE TITLE** | USA ex rel. THEODORE LUCZAK v. JAMES SCHOMIG | | |

**MOTION:**  [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

---

Petitioner's Request For A Certificate Appealability

**DOCKET ENTRY:**

(1) ☐   Filed motion of [ use listing in "Motion" box above.]

(2) ☐   Brief in support of motion due _____.

(3) ☐   Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐   Ruling/Hearing on _____ set for _____ at _____.

(5) ☐   Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐   Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐   Trial[set for/re-set for] on _____ at _____.

(8) ☐   [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐   This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ☐   [Other docket entry] The Court denies Luczak's request for a certificate of appealability because he has failed to show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling," see *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), with regard to any of his claims in his *habeas corpus* petition. Accordingly, the issues of Luczak's were not adequate to deserve encouragement to proceed further.

*Ronald A. Guzman*

(11) ☐   [For further detail see order (on reverse side of/attached to) the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

MMP      courtroom deputy's initials

MAY 2 2003

Number of notices

date docketed

docketing deputy initials

date mailed notice

mailing deputy initials

32

U.S. DISTRICT COURT

03:10 HV 2- YAM

Date/time received in central Clerk's Office

EXHIBIT G

# CERTIFIED COPY

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

**FILED**
**OCT 3 0 2003**
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

Submitted August 8, 2003
Decided August 18, 2003

Before

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

No. 03-2230

| | |
|---|---|
| THEODORE LUCZAK, <br> *Petitioner-Appellant,* <br><br> *v.* <br><br> STEPHEN D. MOTE, <br> *Respondent-Appellee.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division <br><br> No. 01 C 9352 <br><br> Ronald A. Guzman, <br> *Judge.* |

### O R D E R

Theodore Luczak has filed a notice of appeal from the denial of his petition under 28 U.S.C. § 2255 and an application for a certificate of appealability. This court has reviewed the final order of the district court and the record on appeal. We find no substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2).

Accordingly, the request for a certificate of appealability is DENIED. Luczak's motion to proceed in forma pauperis is DENIED.



A True Copy

Clerk of the United States
Court of Appeals for the
Seventh Circuit

EXHIBIT H

38